UNION LEAD MINING AND SMELTER COMPANY, A NEVADA CORPORATION, APPELLANT, v. R. H. DACHNER, DOING BUSINESS UNDER THE FIRM NAME AND STYLE OF "PACIFIC MACHINERY & ENGINEERING COMPANY," RESPONDENT.

No. 3578

December 18, 1951.                    239 P.2d 248.

*John R. Ross,* of Carson City, and *Leslie Riggins,* of Reno, for Appellant.

*Ernest S. Brown,* of Reno, for Respondent.

## OPINION

By the Court, MERRILL, J.:

This is an appeal from an order of the trial court dismissing the action below. To state the matter conservatively, the case involves many confusing and unusual aspects. The parties will here be designated by name: appellant as "Union"; respondent as "Dachner." Dachner was the plaintiff below in an action for contract damages. Union was the defendant.

The first unusual aspect of the case is that the action of the trial court with which we are here concerned was

taken pursuant to motion of the plaintiff Dachner to dismiss his own action. This appeal from that order is taken by the defendant Union.

These unusual circumstances are explained by circumstances still more unusual. The appeal before us is the second appeal taken by Union in the course of this litigation. Earlier, Dachner secured judgment below and Union thereupon appealed from that judgment to this court. Pending that appeal Dachner executed upon property of Union and thereby, pending final determination of the matter, secured full satisfaction of his judgment. On appeal from the judgment, this court reversed the trial court and remanded the matter for a new trial; (Dachner v. Union Lead Mining and Smelter Co., 65 Nev. 313, 195 P.2d 208.) The dismissal of the action below followed, Dachner thereby, and the opinion of this court to the contrary notwithstanding, retaining the benefits of his execution upon the reversed judgment.

These unusual circumstances, in turn, are explained and justified by Dachner's contention that, pending the first appeal (that from the judgment), the action was settled by accord and satisfaction, under the terms of which Dachner retained the fruits of his execution. The motion to dismiss was presented below and was granted by the trial court upon the ground that such settlement rendered the action moot.

Union contends that if any settlement agreement ever was reached, it was without authority on the part of anyone to bind Union. Here we have reached the heart of the present controversy. Union does not question the procedure followed in the trial court and no questions involving such procedure are before us. Union's position is simply that dismissal was not warranted under the facts. For proper consideration of that position, the outline of perplexities heretofore set forth must be somewhat elaborated.

Dachner secured judgment in the sum of $25,467.07 on June 16, 1947. The month following, Union took its first appeal to this court. The succeeding events may

be more easily assimilated if stated under separate headings.

*The "Imperial" contract.* On August 27, 1947, Union entered into a contract with Imperial Lead Mines, Inc. for sale to Imperial of all Union's mining properties and assets. Union was to receive 40 percent of the capital stock of Imperial and a note for $200,000. The agreement recognized that Union had certain obligations which constituted liens against its properties and which were to be discharged by Union. If not so discharged, then they might be paid by Imperial and such payments credited against sums due to Union. Specified as one of these obligations was the Dachner judgment then pending on appeal. Also specified were certain "production certificates" then outstanding, being monetary obligations secured by trust deed and also constituting charges against future production of the mine.

*The Dachner levy of execution.* On November 20, 1947, Dachner successfully levied execution on Union's bank account in satisfaction of his judgment then pending on appeal to this court.

*The Cowden-Haskell action.* Certain of Union's production certificates were held by one Cowden and one Haskell, both being Union stockholders. Imperial entered into a contract relative to acquisition of these certificates and stock holdings. On November 21, 1947, Cowden and Haskell brought action against Imperial based on this agreement and asking judgment in the sum of $24,600. An attachment was levied against Imperial's bank account. While the action was brought against Imperial and was based on its contract, still under the terms of Union's contract with Imperial, the retiring of the production certificates remained primarily Union's obligation.

*Preliminary settlement discussions.* After commencement of this action, conferences were held between representatives of Union and Imperial. It was decided that rather than oppose the action, the certificates of Cowden and Haskell would be bought up by Union on the most

favorable terms that could be secured by negotiation. A cashier's check for $16,000 was secured by Union made payable to its president, Somers. It was then decided that in negotiations with Cowden and Haskell, Union would be represented by its vice-president, Blackwood. At the insistence of Ralph Morgali, Imperial's attorney, the cashier's check was then exchanged for one payable to Blackwood in order to assure and demonstrate Blackwood's authority to act for and bind Union in the negotiations and settlement.

*The settlement agreement.* The settlement negotiations were held November 25, 1947, in the office of Brown & Wells, Reno attorneys for Cowden and Haskell and also attorneys for Dachner. Present were both Brown and Wells, Blackwood and Morgali. An agreement was reached for settlement in the sum of $20,235, being more than $4,000 less than the amount sought by the action. According to the affidavits and testimony of Brown and Wells as given before the trial court on motion to dismiss, in consideration of the settlement at that figure it was agreed by Blackwood that the Dachner action likewise be deemed settled for the sums secured on execution.

*The settlement carried through.* The following day, Morgali returned to the office of Brown & Wells to carry out the terms of the settlement. He presented the Blackwood check and a second check for the balance, $4,235. He received the production certificates and stock certificates of Cowden and Haskell. A telephone call was then placed by Brown to W. E. Baldy, Union's secretary, member of its board of directors and attorney, in Carson City, Nevada, advising Baldy that the pending appeal from the Dachner judgment was to be dismissed. Baldy confirmed the fact that the settlement agreement included settlement of the Dachner action by checking with Blackwood. O. M. Floe, a third member of Union's board of directors, was also consulted and approved the settlement and dismissal. Baldy then dismissed the

appeal. Cowden and Haskell then dismissed their action with prejudice and their attachment was released.

*Reinstatement of the appeal.* In the Dachner action, Union had been represented by three attorneys: Baldy, Wm. S. Boyle of Reno, and Robert E. Berry of Virginia City, with Boyle acting as senior counsel. During the events so far related, Boyle had been seriously ill, had been hospitalized and was then convalescing at his home. He had written Union asking to be relieved of his duties as counsel. A copy of this letter had been received by Baldy at the time he was instructed to dismiss the appeal. Dismissal of the appeal, however, was directly contrary to Boyle's previous advice to Union. On hearing of the action taken, Boyle summoned a majority of Union's officers and board members who thereupon, amongst themselves, repudiated the dismissal (Baldy and Floe reversing themselves in this regard), repudiated Blackwood's action in including settlement of the Dachner action as consideration for settlement of the Cowden-Haskell action against Imperial, and instructed Boyle to move this court for reinstatement of the appeal. No demand ever was made of Cowden or Haskell for return of the money paid. No tender back of the production certificates or stock certificates ever was made. Boyle again became active as senior counsel for Union and the motion for reinstatement was filed and duly made to this court. In affidavits filed in opposition to the motion, the contended settlement of the action was disclosed. It was not, however, argued to this court. The question presented by the motion was not whether grounds for dismissal existed. The sole question was whether an authorized dismissal had in fact been accomplished. This court ordered reinstatement of the appeal. In doing so, however, it clearly did not decide that grounds for dismissal did not exist. The order for reinstatement stated: "Without passing upon the general proposition of law as to the authority of junior counsel to dismiss an appeal contrary to the wishes of senior counsel

[which this court recognized to be the issue confronting it] * * * we are of the opinion that the reinstatement of the appeal will result in less danger of injustice to the parties." No reference whatsoever was made to the contended settlement.

So much for the factual background.

Union's first contention is that the record demonstrates lack of authority in Blackwood to bind Union by his settlement of the Dachner action. Union emphasizes in this regard that his acts were taken without the formal sanction of Union's board of directors. It does not appear, however, that any formal board action whatsoever was taken prior to the settlement conference. If Blackwood was without actual formal authority to settle as he did, he was likewise without actual formal authority to settle in any manner whatsoever. The fixing of any limits upon his authority by formal board action was done, if at all, by way of partial ratification and wholly after the fact.

With reference to his authority, the trial court in dismissing the action below apparently proceeded upon the theory of ostensible authority and specifically found as follows: "The Court finds that the plaintiff herein and the Cowden-Haskell people did have legal reason to believe that Blackwood and Morgali and Baldy had the authority to enter into the agreement."

It cannot be denied that there is substantial evidence in the record to support this finding. Blackwood was armed with a cashier's check to his own order supplied by Union for the purposes of settlement. Morgali, Imperial's attorney, did not question Blackwood's authority to proceed as he did and thus gave indication (at least so far as Imperial was concerned) that he concurred in Blackwood's actions and that Blackwood was proceeding within the scope of his authority. Morgali testified before the trial court that he had conveyed to Brown and Wells the fact that Imperial desired to have all litigation cleared up so that they could get to mining;

that he "was interested from Imperial's point of view in making a settlement so there would be no further litigation." Brown and Wells had every right to assume that both Imperial and Union were interested in disposing of the Dachner litigation. Certainly they could hardly be expected to possess greater knowledge than Morgali's as to Blackwood's actual authority, nor possess greater insight than his into the intentions of Union's officials. Their right to rely upon Blackwood's apparent authority is further strengthened by the fact that neither Baldy nor Floe questioned it until their conference with Boyle.

Even should there be question as to factual support for such a finding, however, it should be clear that Blackwood's conduct had not been properly repudiated and had, therefore, in effect been ratified by Union's failure to demand rescission of the entire agreement as unauthorized. To permit Union to ratify Blackwood's action in part only and to retain in whole the benefits thereof would be to permit it to rewrite the settlement agreement to suit itself.

That the contract, while in settlement of an action against Imperial, was for the benefit of Union cannot be denied. The trial court had before it the statement of Union's president, Somers, to such effect. The production certificates secured thereby were Union's obligations which Union was required to retire and upon consummation of the settlement, Union treated those obligations as no longer valid or outstanding. Union's stock interest in Imperial and its $200,000 note both became enhanced in value by removal of the liens securing the obligations. It is clear that Union benefited from the settlement and retained the benefits thereof while purporting to repudiate the agreement in part. The settlement must, then, be taken to have been ratified in whole. Alexander v. Winters, 24 Nev. 143, 50 P. 798; Federal Mining & Engineering Co. v. Pollak, 59 Nev. 145, 85 P.2d 1008, 1012; See: concurring opinion Defanti v. Allen Clark

Co., 45 Nev. 120, 128, 198 P. 549, 552; Restatement of the Law, Agency, sec. 99.

In Federal Mining & Engineering Co. v. Pollak, supra, [59 Nev. 145, 85 P.2d 1012] this court quoted with approval from 2 Fletcher Cyclopedia Corporations as follows: "This rule is based upon the doctrine of ratification in toto, under which a principal must either ratify the whole transaction or repudiate the whole. He cannot separate the transaction and ratify the part that is beneficial to him, repudiating the remainder; but if he, of his own election and with full knowledge, accepts and retains the benefits of an unauthorized transaction, he must also accept the part that is not beneficial, and will be held to have ratified the whole. In some states this rule is adopted by statute."

As the court there stated: "We have no such statute in this state, but in view of the decisions heretofore rendered by this court, the question as to the applicability of the rule to the facts of this case is not an open one in our jurisdiction."

Union next presses upon us the action of this court in reinstating the appeal as res judicata upon the question of settlement. As we have already pointed out, however, the order reinstating the appeal was not based upon lack of grounds for dismissal. This court was there concerned only with the question whether the appeal had properly been dismissed by one in authority.

True, if the action had become moot by virtue of the settlement, it was moot when this court handed down its opinion upon the judgment. Thus this court undoubtedly has been placed in the somewhat quixotic position of striving mightily to produce a futility. True, Dachner might have moved this court for dismissal of the appeal upon the ground of settlement and thus specifically directed the attention of the court to the moot status

of the matter. However, if the fact of settlement was not presented to the court as a basis for action, neither was it concealed from the court. Thus it can hardly be said that Dachner had abandoned or waived his contentions in relation thereto and his continuing with the appeal upon the merits cannot be said to have operated to nullify the settlement. Mills County v. Burlington & Missouri River Railroad Co., 107 U.S. 557, 27 L.Ed. 578, 2 S.Ct. 654 (in which case the Supreme Court of the United States found itself in a situation substantially identical to that confronting us). Under the circumstances it would ill befit us to read into the order of reinstatement an effectiveness never intended and contrary to its express language for the sole purpose of breathing life into the controversy over which this court was then laboring.

The order of the trial court is affirmed with costs.

BADT, C. J., and EATHER, J., concur.