[No. G028955. Fourth Dist., Div. Three. Jan. 7, 2003.]

JAMES B. SHEA, Plaintiff and Respondent, v.
HOUSEHOLD BANK (SB), NATIONAL ASSOCIATION, Defendant and
Appellant.

**COUNSEL**

Rintala, Smoot, Jaenicke & Rees, G. Howden Fraser; Wilmer, Cutler & Pickering and Christopher R. Lipsett for Defendant and Appellant.

Strange & Carpenter, Brian R. Strange, Gretchen Carpenter; Law Offices of Barry L. Kramer and Barry L. Kramer for Plaintiff and Respondent.

**OPINION**

**RYLAARSDAM, J.**—Defendant Household Bank (SB), National Association appeals from an order denying its petition to compel plaintiff James B.

Shea to arbitrate his claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and fraudulent and negligent misrepresentation. Defendant contends plaintiff is bound to arbitrate under the terms of an amendment to plaintiff's credit card agreement. Plaintiff raises numerous arguments to defeat the arbitration agreement's enforceability. We conclude plaintiff is not bound by the amendment and affirm.

## FACTS

In 1993, plaintiff opened a credit card account with defendant. The contract allowed defendant to modify it upon written notice: ". . . [W]e may change or terminate any term of this agreement or add any new terms at any time, including without limitation adding or increasing fees, [etc.] . . . ." (Capitalization and bold type omitted.) The contract also included a choice of law clause that designated Illinois and federal law to govern disputes. Six years later, plaintiff's account was revised; the choice of law clause now designates Nevada and federal law.

Subsequently, defendant notified plaintiff that effective September 10, 2000, his account would require that "any claim, dispute or controversy" be resolved through binding arbitration. Two days before the amendment became effective, plaintiff's attorney contacted defendant's customer service department "to directly inform [it] that Mr. Shea was refusing to accept the arbitration agreement being unilaterally imposed by defendant, and that Mr. Shea no longer wished to continue using his account." Plaintiff made no more purchases with his credit card, but did not immediately pay off his balance and close his account.

The following month plaintiff, as an individual and as a putative class representative, sued defendant, alleging it improperly charged card holders "overlimit fees and/or other penalties . . . ." In an amended complaint, Ellen Mandel was added as a plaintiff. Household Bank (Nevada), National Association, an entity related to defendant, was later substituted in when Mandel discovered her account was not with defendant. (Mandel is not a party to this appeal but is the respondent in a companion case, *Mandel v. Household Bank (Nevada)* (2003) 105 Cal.App.4th 75█ [129 Cal.Rptr.2d 380].

Defendant filed a petition to compel plaintiff to arbitrate his claims and for a stay. (Code Civ. Proc., §§ 1281.2, 1281.4; 9 U.S.C. § 1 et seq.) It argued the arbitration provision is a valid modification of the contract and is fully enforceable under Nevada law. Plaintiff opposed the motion, contending, among other things, defendant could not unilaterally amend the original contract, and he expressly refused to be bound by the arbitration provision.

The court agreed plaintiff did not use his credit card after being given notice and refused to be bound by the arbitration clause; thus he could not be compelled to arbitrate.

## DISCUSSION

■ In a companion opinion, after striking a provision barring class arbitration, we conclude Ellen Mandel is bound to arbitrate her claims. (*Mandel v. Household Bank (Nevada), supra,* 105 Cal.App.4th 75.) Plaintiff repeats many of Mandel's arguments we found unavailing. Unlike Mandel, however, plaintiff expressly refused to be bound by the amendment adding an arbitration requirement. In *Badie v. Bank of America* (1998) 67 Cal.App.4th 779 [79 Cal.Rptr.2d 273], the defendant tried to add an alternative dispute resolution provision to an existing account agreement by sending an insert setting out the terms with the monthly bill. The court refused to enforce an arbitration provision it determined was unilaterally added to the agreement. It found the plaintiff never agreed to arbitrate. " 'Although "[t]he law favors contracts for arbitration . . . [citation]," " 'there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate . . . .' " [Citations.]' [Citations.]" (*Id.* at p. 788.)

Nonetheless, defendant contends the amendment binds plaintiff because he "kept his account open, and . . . he continued to use [defendant's] money . . . ." Under defendant's argument, any time a credit card holder has an outstanding balance, the mere failure to pay it off immediately, without more, constitutes consent to a modification that will apply retroactively. True enough, plaintiff did not immediately pay off his outstanding balance and cut his card. He continued to "use" defendant's money in the sense that he had previously made purchases on credit and did not immediately pay them off.

Nevada law does provide that "[p]arties may mutually consent to enter into a valid agreement to modify a former contract. [Citation.] . . . [C]onsent to a modification may be implied from conduct consistent with an asserted modification. [Citation.]" (*Clark County Sports Enterprises v. City of Las Vegas* (1980) 96 Nev. 167 [606 P.2d 171, 175].) The question then becomes whether plaintiff's failure to immediately pay off the balance and cancel the card amounted to a ratification. Our answer is no.

There is no law directly on point, but federal and Nevada law, which govern the contract, support our conclusion. The federal Truth in Lending Act (15 U.S.C. § 1601 et seq.) regulates credit card agreements. Regulation Z (12 C.F.R. § 226.1 et seq. (2002)), which implements the statute, requires

a credit card issuer to give 15 days' written notice of changes in terms. (12 C.F.R. § 226.9(c)(1).) However, in limited circumstances (12 C.F.R. § 226.9(c)(1), Supp. I), 15 days' notice is not required; notice may be given simultaneously with the change. (12 C.F.R. § 226.9(c)(1).) These limited circumstances specifically exclude "the consumer's use of the account (which might imply acceptance of its terms under State law) . . . ." (12 C.F.R. § 226.9(c)(1), Supp. I.) Based on this language and the absence of any other, it is reasonable to infer federal law defers to state law regarding the meaning of "use."

Turning to Nevada law, while we found nothing directly defining "use" or "continuing use" of a credit card, one statute is instructive. It requires a card issuer to disclose to a customer the "terms and conditions that govern the use of the credit card . . . before or at the time" the card is sent to the customer. (Nev. Rev. Stat. Ann. § 97A.140, subd. 2.) It further states: "A cardholder shall be deemed to have accepted the written terms and conditions provided by the issuer upon subsequent *actual use* of the credit card." (*Ibid.*, italics added.)

In interpreting a statute under Nevada law, we look first to its plain language, attributing the usual, ordinary, and commonsense meaning. (See *United States v. State Engineer* (Nev. 2001) 27 P.3d 51, 53.) Where the words are susceptible to more than one meaning, we construe them to best effectuate the legislative intent. (*Davenport v. Comstock Hills-Reno* (Nev. 2002) 46 P.3d 62, 64, fn. 4.)

This portion of the statute refers to "actual use," not just "use." (Nev. Rev. Stat. Ann. § 97A.140, subd. 2.) This contrasts with five other instances where the statute employs merely "use." We presume that "every word, phrase, and provision in the [statute] has meaning." (*Mangarella v. State* (2001) 117 Nev. 130 [17 P.3d 989, 991], fn. omitted.) The commonsense meaning of "actual use" denotes some kind of affirmative act; mere inaction would not seem to suffice.

Although acceptance of the terms of an amendment to the credit card agreement is not covered by this section, this provision (Nev. Rev. Stat. Ann. § 97A.140, subd. 2) and one allowing issuers to unilaterally modify credit card agreements (Nev. Rev. Stat. Ann. § 97A.140, subd. 4) are contained in the same section and therefore are part of the statutory scheme regulating credit card issuers. It is not likely the legislature would have required actual use by a consumer to accept the original terms of a credit card agreement but settled for something less definite or overt to signify acceptance of an amendment to that agreement.

We acknowledge Nevada law provides for unilateral modification of credit card contracts by the issuer. (Nev. Rev. Stat. Ann. § 97A.140, subd. 4.) But it is not reasonable to presume the Nevada Legislature intended to allow all modifications to be applied to all previous extensions of credit, no matter what the consumer does to demonstrate lack of agreement.

Defendant claims plaintiff had a way to avoid application of the amendment—cancel the account and pay off the balance. The dissent agrees, maintaining a party cannot simultaneously repudiate and benefit from a contract. But we are not persuaded paying off the balance pursuant to previously agreed upon terms constitutes a benefit. The dissent's position is also based on the unwarranted premise that a credit card holder is always in a financial position to be able to immediately pay off the entire balance when confronted with an unacceptable change of terms. In fact, it is much more likely the reverse is true, and credit card issuers must be aware of that. So, when placed between Scylla and Charybdis, the practical result is the consumer has no choice at all and is forced to "agree" to the modification.

Under these facts, enforcement of the provision would also fly in the face of California public policy. In *Szetela v. Discover Bank* (2002) 97 Cal.App.4th 1094 [118 Cal.Rptr.2d 862], we upheld a unilateral amendment adding an arbitration provision. But the amendment gave the plaintiff the option to close his account if he did not agree to arbitration. Thus, there the plaintiff actually could have paid off the balance and avoided arbitration.

Here, by contrast, plaintiff could not escape from the confines of arbitration. The amendment states: "This arbitration agreement shall survive termination of your Account as well as the repayment of all amounts borrowed hereunder." Even if plaintiff had done what defendant suggests, he still would have been subject to the arbitration provision; there was no way for him to opt out. That issue is not before us; the parties did not argue it. However, a good case could be made the term was unconscionable.

But such a determination is not a necessary underpinning of our decision. Based on the particular facts of this case and applicable law, we will not enforce the arbitration provision.

### DISPOSITION

The order is affirmed. Respondent shall recover his costs on appeal.

Sills, P. J., concurred.

**FYBEL, J.,** Concurring and Dissenting.—In a companion opinion, *Mandel v. Household Bank (Nevada)* (2003) 105 Cal.App.4th 75█ [129 Cal.Rptr.2d 380]

(*Mandel*), we analyzed a provision in a credit card agreement barring class actions identical to the provision in this case. In *Mandel,* we concluded the provision was unconscionable. As in *Szetela v. Discover Bank* (2002) 97 Cal.App.4th 1094 [118 Cal.Rptr. 862], we struck and severed the provision and ordered the matter to arbitration under the principles of *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 [99 Cal.Rptr.2d 745, 6 P.3d 669]. I favor reaching the same result in this case.

I concur in the portion of the majority opinion finding the limitation on class actions in the arbitration agreement in this case is unconscionable. I respectfully dissent, however, from the majority's conclusion that Shea is not bound by the arbitration agreement. The trial court heard the motion to compel arbitration under Code of Civil Procedure section 1281.2. The arbitration agreement was alleged. The same majority members in this case previously held that once the existence of the arbitration agreement is alleged, the burden shifts to the objecting party to prove the arbitration agreement does not apply. (*Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215, 219 [105 Cal.Rptr.2d 597].) For the following reasons and authorities, Shea failed to meet this burden.

Shea's credit agreement with Household Bank stated it was for "the open end line of credit we have established for you and which can be accessed by your Card or other means approved by us." The credit agreement also provided: "This Agreement (and any amendments) covers your Account with us, and you and we will be bound by it from the time you receive your Card or Agreement. . . . You may cancel this Account before using it without paying any fees." Thus, the agreement at issue in this case is one in which Household Bank extended credit and Shea used that extension of credit.

In *Mandel*, we acknowledged that Nevada law permitted Household Bank to unilaterally amend the terms and conditions of Mandel's credit agreement. Shea contends he effectively rejected the arbitration provision of the amended agreement when his attorney called Household Bank's customer service department and informed it "that Mr. Shea was refusing to accept the arbitration agreement being unilaterally imposed by [Household Bank], and that Mr. Shea no longer wished to continue using his account."

Despite Shea's counsel's statement, Shea did not stop using his account. Instead, he continued to use the extension of credit offered by the account. As of the time of the hearing on the petition to compel arbitration, Shea had a balance of almost $3,000 owing to Household Bank.

The extension of credit is a benefit of the account. By failing to pay the account balance, Shea continued to use the account. I depart from the majority because under Nevada law, Shea cannot reject a term of the account—the arbitration clause—while continuing to use the account by enjoying the extension of credit.

On the question whether Shea's case should be arbitrated, the majority principally relies on a Nevada statute deeming "actual use" of the card acceptance of a credit card agreement. (Nev. Rev. Stat. Ann. § 97A.140, subd. 2.) This statute simply identifies the trigger for starting an account. It does not address the question whether continuing to maintain an extension of credit (i.e., failing to pay the account balance) without making new purchases constitutes continued use of the account. No Nevada case authority supports the broad statutory construction given by the majority opinion. Significantly, the parties' agreement itself concerns an "open end line of credit." Shea continued to use the open line of credit by failing to pay the balance and enjoying the extension of credit.

Many Nevada cases hold as a general proposition that a party cannot simultaneously repudiate and benefit from a contract. (E.g., *Union Lead Mining & Smelter Co. v. Dachner* (1951) 68 Nev. 518 [239 P.2d 248, 252]; *Federal Mining & Engineering Co. v. Pollak* (1939) 59 Nev. 145 [85 P.2d 1008, 1012]; *Alexander v. Winters* (1897) 24 Nev. 143 [50 P. 798, 799].) The *Mandel* and *Shea* opinions recognize this very principle by citing *Clark County Sports Enterprises v. City of Las Vegas* (1980) 96 Nev. 167 [606 P.2d 171]. That principle applies here.

The majority also notes the amendment to the credit agreement (which Shea purportedly rejected) stated the arbitration provision survived termination, and repayment, of the account. The majority suggests such a provision could be unconscionable, but concludes that determination is not a necessary underpinning of the decision. I agree such a provision may be unconscionable. An unconscionable provision should not be relied upon to support the majority's decision.

The majority opinion asserts Shea could not be expected to pay off his credit card debt. (I am not persuaded it is even relevant whether Shea could pay off his account. The assumption he could not pay the balance—either with his own funds or by finding another account—shows Shea is *benefitting* from the extension of credit.) Nevertheless, nothing in the appellate record cited by the majority supports the statement that Shea was unable to pay off his debt. Shea did not satisfy his burden to prove the arbitration agreement

did not apply under *Condee v. Longwood Management Corp., supra,* 88 Cal.App.4th 215. As the trial court noted, Shea may or may not have had alternative sources of credit (with no arbitration clause) with which he could have paid off his Household Bank account. "In actual effect, anybody who is savvy when it comes to credit cards, as Mr. Shea was, knows that he opens one of the other six or seven envelopes in his mail, finds a card that's giving him an extremely low interest rate for the first two months, and he rolls it all over and pays it off that way and saves himself some money in the short run."

Shea might or might not have established another credit account without the arbitration provision to which he objected. The important point, however, is there is nothing in the record cited by the majority that tells us what Shea could or could not have done.

Finally, Shea and Mandel once were both plaintiffs in the same case, but their cases were separated because their claims were against different entities. Their claims for relief, however, are identical. Requiring Mandel to arbitrate while permitting Shea to proceed to trial may lead to inconsistent results. Because the trial court concluded that neither case should be ordered to arbitration, it did not make any findings regarding the possibility of inconsistent results under Code of Civil Procedure section 1281.2, subdivision (c).

I conclude that Shea's claims are arbitrable for the same reasons and on the same basis as set forth in *Mandel,* and would reverse the trial court's order denying the petition to compel arbitration. At a minimum, I would remand the matter to the trial court to make findings under Code of Civil Procedure section 1281.2.

Appellant's petition for review by the Supreme Court was denied April 9, 2003.