129 Cal.Rptr.2d 380 (2003)
105 Cal.App.4th 75
Ellen MANDEL, Plaintiff and Respondent,
v.
HOUSEHOLD BANK (NEVADA), NATIONAL ASSOCIATION, Defendant and Appellant.
No. G029531.
Court of Appeal, Fourth District, Division Three.
January 7, 2003.
*382 Rintala, Smoot, Jaenicke & Rees, G. Howden Fraser, Los Angeles; Wilmer, Cutler & Pickering, Wash., Dist. of Columbia, and Christopher R. Lipsett, for Defendant and Appellant.
Michael F. Crotty, Laurel, MD, for American Bankers Association as Amicus Curiae on behalf of Defendant and Appellant.
Strange & Carpenter, Brian R. Strange and Gretchen Carpenter; Law Offices of Barry L. Kramer and Barry L. Kramer, Los Angeles, for Plaintiff and Respondent.

*381 OPINION
RYLAARSDAM, J.
Defendant Household Bank (Nevada), National Association, appeals from an order denying its petition to compel plaintiff Ellen Mandel to arbitrate her claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and fraudulent and negligent misrepresentation. Defendant contends plaintiff is bound to arbitrate under the terms of an amendment to her credit card agreement. Plaintiff raises numerous arguments to defeat enforceability of the arbitration agreement. We conclude the term barring class arbitration is unconscionable and strike it. Otherwise, the agreement is enforceable and binding on plaintiff. We therefore reverse and remand.

FACTS
In 1988, plaintiff opened a credit card account with defendant. The contract allowed defendant to modify it upon written notice: "We have the right to change the terms of this agreement from time to time." (Capitalization and bold type omitted.) The contract also included a choice of law clause that designated California and federal law to govern disputes. Eight years later, plaintiffs account was revised to substitute Nevada law for California law. In 1998, defendant again amended the agreement to read, in part, "[W]e may *383 change or terminate any term of this agreement or add any new terms at any time, including without limitation adding or increasing fees, [etc.] . . .." (Capitalization and bold type omitted.)
In early 2000, defendant notified plaintiff that effective April 1, the contract would require "any claim, dispute or controversy" be resolved through binding arbitration. Plaintiff did not contact defendant regarding the amendments and continued using her credit card for purchases after the effective date.
Subsequently, James B. Shea sued Household Bank (SB), National Association, an entity related to defendant, alleging it improperly charged cardholders "overlimit fees and/or other penalties. . .." Mandel was added as a plaintiff; defendant was later substituted in when plaintiff discovered her account was not with the same institution as Shea's. (Shea is not a party to this appeal, but is the respondent in a companion appeal, Shea v. Household Bank (SB) National Association (2003) 105 Cal.App.4th. 85, 129 Cal.Rptr.2d 387.
Defendant petitioned the court to compel plaintiff to arbitrate her claims and for a stay. (Code Civ. Proa, §§ 1281.2, 1281.4; 9 U.S.C. § 1 et seq.) It argued the arbitration provision was a valid modification of the contract and fully enforceable under Nevada law. Plaintiff opposed the motion contending, among other things, defendant could not unilaterally amend her contract, she did not knowingly waive her right to litigate in court, and the agreement is unconscionable because it bars class arbitration. The court denied the petition.

DISCUSSION

Defendant Properly Amended the Contract Pursuant to Nevada Law
Both parties agree Nevada law governs their contract. (For that reason, we reject plaintiffs request to take judicial notice of an unpublished opinion of the New Jersey Superior Court based on New Jersey law.) Nevada law provides generally that "[p]arties may mutually consent to enter into a valid agreement to modify a former contract. [Citation.]" (Clark County Sports Enterprises v. City of Las Vegas (1980) 96 Nev. 167, 606 P.2d 171, 175 (Clark County); see also Jensen v. Jensen (1988) 104 Nev. 95, 753 P.2d 342, 344.) But the Nevada Legislature created an exception to the requirement of mutuality by allowing banks and credit card companies to modify the terms of cardholders' contracts. "An issuer may unilaterally change any term or condition for the use of a credit card without prior written notice to the cardholder unless the change will adversely affect or increase the costs to the cardholder for the use of the credit card." (Nev.Rev.Stat. Ann., § 97A.140, subd. 4 (section 97A.140).)
We have not found any published opinions of the Nevada Supreme Court interpreting or applying section 97A. 140 and therefore apply Nevada principles of statutory construction. "[S]tatutes should be given their plain meaning. [Citation.] In addition, statutory interpretation should avoid absurd or unreasonable results. [Citations.]" (Alsenz v. Clark Co. School Dist. (1993) 109 Nev. 1062, 864 P.2d 285, 286-287.) Section 97A.140 allows credit card companies to "change" terms. Plaintiff argues this bars defendant from "the unilateral addition of an arbitration clause." We disagree.
In the absence of specific Nevada statutes or case law, we rely on general rules of contract amendment. "A modification of a contract is a change in one or more respects which introduces new elements *384 into the details of the contract, cancels some of them, but leaves the general purpose and effect undisturbed. [Citations.]" (Chicago College of Osteo. v. George A. Fuller Co. (7th Cir.1985) 776 F.2d 198, 208, italics added; see also Eluschuk v. Chemical Engineers Termite Control, Inc. (1966) 246 Cal.App.2d 463, 469, 54 Cal.Rptr. 711; Hildreth Consulting Engineers, P.C. v. Larry E. Knight, Inc. (D.C.2002) 801 A.2d 967, 974; Webb v. Finger Contract Supply Company (Tex. 1969) 447 S.W.2d 906, 908; Board of Directors, etc. v. Board of Education, etc. (1959) 250 Iowa 1107, 97 N.W.2d 166, 167.) "[I]t is entirely competent for the parties to a contract to modify or waive their rights under it and engraft new terms upon it." (17A Am.Jur.2d (1991) Contracts, § 520, p. 536, fn. omitted.)
It is also instructive to look at similar statutes. At least four other states have adopted laws allowing banks or credit card companies to "change" terms (Iowa Code Ann., § 537.3205, subd. 1; Me.Rev.Stat. Ann., tit. 9-A, § 3-204, subd. 2; S.D. Codified Laws, § 54-11-10; Utah Code Ann., § 70C-4-102, subd. (2)), two allow them to "amend" terms (Del.Code Ann., tit. 5, § 952, subd. (a); N.J. Stat. Ann., 17:3B-41, subd. a), another two allow credit card companies to "modify" terms (Ala.Code, § 5-20-5; Ga.Code Ann., § 7-5-4, subd. (c)), and one provides for "modifying or amending" terms (Ohio Rev.Code Ann., § 1109.20, subd. (D)).
Plaintiff relies heavily on Badie v. Bank of America (1998) 67 Cal.App.4th 779, 79 Cal.Rptr.2d 273. As we discuss below, Badie does not bar enforcement of the arbitration provision. But it does support the analysis here by downplaying the importance of whether "change" includes "add." (Id. at pp. 797-798, 79 Cal.Rptr.2d 273.)
Against this background, it is unreasonable to assume the Nevada Legislature used the word "change" in such a limited fashion as to exclude additions. Because addition of an arbitration agreement in no way disturbs the core purpose of the contract, i.e., providing consumer credit, it conforms to Nevada law.
We also reject plaintiffs argument that section 97A.140 does not apply because it was enacted in 1995, after the original contract between the parties. The amended contract containing the arbitration provision was not made until 1999, after the statute's effective date. Generally, the laws in effect at the time a contract is executed govern. (City of Shasta Lake v. County of Shasta (1999) 75 Cal.App.4th 1, 16, 88 Cal.Rptr.2d 863.) The same applies to the amendment here.

California Public Policy Does Not Preclude Amendment to the Contract
Plaintiff also argues defendant's unilateral amendment of her contract violates California public policy, citing Badie v. Bank of America, supra, 67 Cal.App.4th 779, 79 Cal.Rptr.2d 273. Although this dispute is governed by Nevada law, even under California law, we can discern no fundamental public policy to prohibit us from enforcing the arbitration provision added to the contract. Badie is not: persuasive. There, the defendant tried to add an alternative dispute resolution term to the existing account agreement by sending an insert setting out the provision with the monthly bill. The court refused to enforce the purported amendment. (Id. at p. 807, 79 Cal.Rptr.2d 273.)
One of the main grounds for the decision in Badie was the finding that the addition of the arbitration provision was outside the parties' intent when they agreed terms could be changed. (Badie v. Bank of America, supra, 67 Cal.App.4th at p. 801, *385 79 Cal.Rptr.2d 273.) The court held that the defendant, which, by contract, had "the unilateral right to modify a contract, [did not have] carte blanche to make any kind of a change whatsoever as long as a specified procedure is followed." (Id. at p. 791, 79 Cal.Rptr.2d 273.) Rather, it stated, "when the account agreements were entered into, the parties did not intend that the change of terms provision should allow the [defendant] to add completely new terms such as [an arbitration] clause simply by sending out a notice." (Id. at p. 803, 79 Cal.Rptr.2d 273.)
Here, by contrast, before the addition of the arbitration provision, the parties had already agreed defendant could "add any new terms at any time. . .." California law specifically allows parties to agree to modify a contract. (Civ.Code, § 1698.) "A written contract may expressly provide for modification. [Citation.] When a modification is in accordance with a provision authorizing and setting forth a method for its revision the rule that a contract in writing may be altered only by another written contract or an executed oral agreement has no application because there is no alteration. The modification is in accordance with the terms of the contract. [Citation.]" (Busch v. Globe Industries (1962) 200 Cal. App.2d 315, 320, 19 Cal.Rptr. 441.) The right to unilaterally add a term to the contract in and of itself does not offend California's public policy.

Plaintiff Ratified the Amendment Through Her Conduct
We also disagree with plaintiffs argument she is not bound by the amendment because she did not knowingly and willingly waive her right to pursue claims in court. The record establishes defendant gave proper notice of the addition of the arbitration provision. In addition, plaintiffs actions here are not comparable to those in Badie v. Bank of America, supra, 67 Cal.App.4th 779, 79 Cal.Rptr.2d 273. There, the court found there was "no unambiguous and unequivocal waiver" of the right to a jury trial. (Id. at p. 806, 79 Cal.Rptr.2d 273.)
Here, however, plaintiff did not expressly object to the amendment; in fact, her actions displayed just the opposite. She continued to use her credit card for purchases after receiving notice of the amendment, and even after the dispute over enforceability of the arbitration provision arose. "[C]onsent to a modification may be implied from conduct consistent with an asserted modification. [Citation.]" (Clark County, supra, 606 P.2d at p. 175.) As such, plaintiff is bound by the amendment adding the arbitration provision.

The Provision Barring Class Arbitration is Unconscionable
Lastly, plaintiff contends the arbitration agreement is unconscionable because it contains this language: "No class actions or joinder or consolidation of any Claim with the claim of any other person are permitted in arbitration without written consent of [plaintiff] and [defendant]." While we agree the term is unconscionable, it does not invalidate the entire arbitration agreement.
In Szetela v. Discover Bank (2002) 97 Cal.App.4th 1094, 1100-1102, 118 Cal. Rptr.2d 862 (Szetela), we severed a provision barring class arbitration from an arbitration agreement. The offending term stated: "Neither you nor we shall be entitled to join or consolidate claims in arbitration by or against other cardmembers with respect to other accounts, or arbitrate any claims as a representative or member of a class or in a private attorney general capacity." (Id. at pp. 1096-1097, 118 Cal. Rptr.2d 862, capitalization omitted.) We *386 found the provision unconscionable because the defendant, "[f]ully aware that few customers will go to the time and trouble of suing in small claims court," "sought to create for itself virtual immunity from class . . . actions . . . while suffering no similar detriment. . .." (Id. at p. 1101, 118 Cal.Rptr.2d 862.) Thus, the bar was "harsh and unfair to . . . customers who might be owed a relatively small sum of money," and gave the defendant "a license to push the boundaries of good business practices to their furthest limits. . .." (Ibid.)
At first glance, the ban here does not appear so one-sided. It expressly leaves open the possibility of class arbitration if both sides consent. Nonetheless, defendant retains the right to veto plaintiffs request for class arbitration. And, at oral argument defendant conceded the term has the same effect as a complete prohibition on class arbitration, at least as applied in this case.
Defendant asserts that to some undefined extent, a state's public policy is preempted by the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.), and the parties' agreement as to the manner of arbitration, including a prohibition on class treatment, must be enforced. Certainly, if a state's law disfavors arbitration and creates unreasonable hurdles to the enforcement of arbitration agreements governed by the FAA, it is preempted. (See Doctor's Associates, Inc. v. Casarotto (1996) 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902.) But Nevada law favors arbitration of disputes (Phillips v. Parker (1990) 106 Nev. 415, 794 P.2d 716, 718), and therefore federal preemption is inapplicable.
Nevada mirrors California in its analysis of unconscionability (Burch v. Second Judicial District Court (Nev.2002)  Nev. ___, 49 P.3d 647, 650-651, fns. 14, 17, 18), and we assume the result in Szetela would be the same had Nevada law applied. A party may not be forced to abide by contract terms that were obtained as a result of unfair bargaining power and are so one-sided and oppressive as to "shock the conscience." (Szetela, supra, 97 Cal.App.4th at p. 1100, 118 Cal.Rptr.2d 862.) This approach is perfectly consistent with the FAA which provides that arbitration agreements "involving commerce" are fully enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2; see also Doctor's Associates, Inc. v. Casarotto, supra, 517 U.S. at p. 687, 116 S.Ct. 1652.)
Plaintiffs contract provides for severance of any term "determined to be void or unenforceable under any law, rule, or regulation. . .." Therefore, the proper course is to sever the ban on class actions and enforce the remainder of the arbitration agreement. (Nev.Rev.Stat. Ann., § 104.2302, subd. 1; Vincent v. Santa Cruz (1982) 98 Nev. 338, 647 P.2d 379, 381; see also Armendariz v. Foundation Health Psychcare Services, Inc. (2000) 24 Cal.4th 83, 124, 99 Cal.Rptr.2d 745, 6 P.3d 669.)

CONCLUSION
The order is reversed and remanded. On remand, the superior court shall enter an order striking the term that prohibits class arbitration, and compel respondent to arbitrate her claims. Respondent's request for judicial notice is denied. Appellant shall recover its costs on appeal.
WE CONCUR: SILLS, P.J., and FYBEL, J.