**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3399-24

DEVON BYRD,

    Plaintiff-Appellant,

v.

MHC RECEIVABLES, LLC,
FNBM, LLC, SHERMAN
ORIGINATOR III LLC, and
SHERMAN ORIGINATOR,
LLC,

    Defendants-Respondents.

_____

Argued April 22, 2026 – Decided May 12, 2026

Before Judges Paganelli and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-7532-24.

Nick B. Gagua argued the cause for appellant (Kim Law Firm, LLC, attorneys; Yongmoon Kim and Nick B. Gagua, on the briefs).

Elsbeth Bennett (Cleary Gottlieb Steen & Hamilton LLP) of the District of Columbia and New York bars, admitted pro hac vice, argued the cause for respondents

(Sam M. Koch (Foley & Lardner LLP), Samuel J. Fishman (Foley & Lardner LLP), Nowell D. Bamberger (Cleary Gottlieb Steen & Hamilton LLP) of the District of Columbia and Maryland bars, admitted pro hac vice, Elsbeth Bennett, Andrew Khanarian (Cleary Gottlieb Steen & Hamilton LLP) of the New York bar, admitted pro hac vice, attorneys for respondents MHC Receivables LLC and FNBM LLC; Austin P. O'Brien (J. Robbin Law PLLC), attorney for respondents Sherman Originator III LLC and Sherman Originator LLC; Sam M. Koch, Samuel J. Fishman, Nowell D. Bamberger, Elsbeth Bennett, Andrew Khanarian, and Austin P. O'Brien, on the joint brief).

PER CURIAM

Plaintiff Devon Byrd appeals from a May 16, 2025 order granting a motion filed by defendants MHC Receivables, LLC (MHC), FNBM, LLC (FNBM), Sherman Originator III, LLC, and Sherman Originator, LLC to compel arbitration. We affirm the portion of the trial court's order compelling arbitration but reverse the portion of the order dismissing the complaint and remand for the entry of an amended order staying the case pending arbitration.

## I.

We derive the salient facts from the record. In the fall of 2017, plaintiff opened a credit account with Credit One Bank (Account). On November 1, 2017, Credit One Bank mailed plaintiff a credit card along with a statement of the terms and conditions that governed the Account (Original Agreement).

A-3399-24

The Original Agreement contained an arbitration clause that provided in part as follows:

> Agreement to Arbitrate:
>
> You and we agree that either you or we may, without the other's consent, require that any controversy or dispute between you and us (all of which are called "Claims"), be submitted to mandatory, binding arbitration. This [a]rbitration [a]greement is made pursuant to a transaction involving interstate commerce, and shall be governed by, and enforceable under, the Federal Arbitration Act (the "FAA"), 9 U.S.C. §1 et seq., and (to the extent State law is applicable), the State law governing the Card Agreement.
>
> . . . .
>
> . . . [D]isputes about the validity, enforceability, coverage or scope of this [a]rbitration [a]greement or any part thereof are not subject to arbitration and are for a court to decide. But disputes about the application, enforceability or interpretation of the . . . [a]greement as a whole are subject to arbitration and are for the arbitrator to decide.
>
> [(Emphasis added and boldface omitted).]

The Original Agreement also stated Credit One Bank could change its terms "at any time upon such notice as required by law" and set forth a procedure for the cardholder to object to any changes as follows:

> CHANGES IN AGREEMENT TERMS: We can change any term of this Agreement, including the rate

3

of the finance charge or the manner in which the finance charges are calculated, or add new terms to this [a]greement, at any time upon such notice to you as is required by law. As permitted by law, any change will apply to your new activity and, in certain circumstances, to your outstanding balance when the change is effective. If you do not wish to be subject to the change, you must notify Credit One Bank by calling our toll-free number . . . or you may write to us . . . prior to the effective date of the change, and close your [a]ccount.

[(Boldface omitted).]

After plaintiff activated his Credit One Bank credit card, he charged several purchases to his Account. Plaintiff's last charge on the card was on April 9, 2018, and he made his last payment towards the balance on September 14, 2018.

In December 2018, Credit One Bank modified its terms and conditions and mailed a revised agreement (Revised Agreement) to plaintiff's billing address. Among other changes, the Revised Agreement modified the arbitration clause to state:

[C]ontroversies or disputes about the validity, enforceability, coverage, meaning, or scope of this agreement to arbitrate or any part thereof are subject to arbitration and are for the arbitrator to decide. Any questions about what [c]laims are subject to arbitration shall be resolved by interpreting this [Revised A]greement to arbitrate in the broadest way the law will allow it to be enforced.

4

[(Emphasis added).]

The Revised Agreement also provides that plaintiff could reject the modified arbitration clause:

> How to REJECT this [a]greement to [a]rbitrate: You can reject this agreement to arbitrate but only if we receive from you a written notice of rejection within [forty-five] days after it was first provided to you. To reject this agreement to arbitrate you must send the notice of rejection to: Credit One Bank, Attention: Arbitration Opt Out, P. O. Box 98873, Las Vegas, NV 89193- 8873. Rejection notices sent to any other address will not be accepted or effective. If you decide to reject this agreement to arbitrate in writing, your notice must state that you reject this agreement to arbitrate and include your name, address, account number, and personal signature. Rejection of arbitration will not affect your other rights or responsibilities under this . . . [a]greement.

[(Boldface omitted).]

Plaintiff did not reject the modified arbitration clause or any other portion of the Revised Agreement. In January 2019, after plaintiff had failed to make further payment, Credit One Bank "charged-off" the Account. The Account was then transferred several times until it was acquired by its present-owner, LVNV Funding, LLC (LVNV), in February 2019.

Both the Original Agreement and the Revised Agreement contained a choice-of-law clause that stated Nevada substantive law would govern any

A-3399-24

disputes. Both agreements permitted plaintiff to close the Account at any time without first paying any outstanding balance in full. Additionally, both agreements stated their terms applied to all of Credit One Bank's successors and assigns.

On October 30, 2020, LVNV filed a collection action against plaintiff. Plaintiff failed to answer and default judgment was entered against him for $896.21. Plaintiff later satisfied LVNV's default judgment.

On October 29, 2024, plaintiff filed this Law Division action alleging defendants unlawfully purchased and enforced "void consumer debts" without complying with the New Jersey Consumer Finance Licensing Act (CFLA), N.J.S.A. 17:11C-1 to -49. Plaintiff also alleged common law fraud, fraudulent inducement, and violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -233. LVNV was not a party to the action.

On January 31, 2025, defendants moved to compel arbitration. After oral argument, the judge granted defendants' motion. In an accompanying written statement of reasons, the judge framed the issue as whether the arbitration clause in the Revised Agreement was enforceable against plaintiff under Nevada law. Plaintiff argued he had not agreed to the modified arbitration clause because there was no "actual use" of the Account after he received the Revised

Agreement. Rejecting this argument, the judge found plaintiff had availed himself of the benefits of the Account because he had maintained an outstanding balance after Credit One Bank had issued the Revised Agreement.

After finding the Revised Agreement enforceable, the judge applied the Nevada Supreme Court's holding in Airbnb, Inc. v. Rice, 518 P.3d 88, 92 (Nev. 2022), and entered an order that compelled arbitration and dismissed plaintiff's complaint. The judge concluded "when a contract delegates the arbitrability question to the arbitrator, a court has no authority to decide whether the arbitration agreement applies to the dispute, even where the argument for arbitrability is wholly groundless."

On appeal, plaintiff argues the judge erred by finding he became bound by the Revised Agreement's terms through "actual use" of the Account. Defendants argue the order should be affirmed because the modified arbitration clause in the Revised Agreement is enforceable under Nevada law.

## II.

Applying a de novo standard of review, Lahoud v. Anthony & Sylvan Corp., 481 N.J. Super. 29, 40 (App. Div. 2025), we discern no error in the entry of the order enforcing the Revised Agreement and compelling arbitration, though we affirm on different grounds than those articulated by the judge.

7                                                                                    A-3399-24

N.A.R., Inc. v. E. Outdoor Furnishings, 480 N.J. Super. 553, 565 (App. Div.), certif. denied, 260 N.J. 464, 334 (2025) ("An order will be affirmed on appeal if it is correct, even if we do not adopt the specific reasoning of the trial judge.").

It is undisputed Nevada law governs based on the choice-of-law clause in both agreements. "Nevada has a 'fundamental policy favoring the enforceability of arbitration agreements,' and [its courts] will 'liberally construe arbitration clauses in favor of granting arbitration.'" Uber Techs., Inc. v. Royz, 517 P.3d 905, 908 (Nev. 2022) (quoting Tallman v. Eighth Jud. Dist. Ct., 359 P.3d 113, 118-19 (Nev. 2015)).

Although Nevada substantive law applies based on the parties' choice of law clause, where the FAA "governs an arbitration agreement, state courts are compelled to follow that act and any federal law construing it." Royz, 517 P.3d at 907. Under federal law, a motion to compel arbitration generally calls for a two-step inquiry concerning the arbitrability of the dispute predicated on: (1) whether there is a valid arbitration agreement, and (2) whether the dispute falls within the scope of that agreement. See AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986); see also SR Constr., Inc. v. Peak Bros. Constr., Inc., 510 P.3d 794, 798 (Nev. 2022) (stating that a moving party seeking to compel arbitration "must establish that there is an enforceable

agreement to arbitrate and that the dispute fits within the scope of the arbitration agreement"). "The question whether the parties have submitted a particular dispute to arbitration . . . is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (alteration in original) (quoting AT&T, 475 U.S. at 649); see also Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 67 (2010) (stating parties may consensually agree to arbitrate the "gateway" issue of arbitrability, whereby the arbitrator determines their own jurisdiction); Henry Schein, Inc. v. Archer & White Sales, Inc., 586 U.S. 63, 68-69 (2019) (holding that when parties delegate the question of arbitrability to an arbitrator, a court "may not override the contract" because it lacks the power to decide the issue entirely).

Under Nevada law, an enforceable contract requires "offer and acceptance, meeting of the minds, and consideration." May v. Anderson, 119 P.3d 1254, 1257 (Nev. 2005). In the context of credit cards, "[a] cardholder shall be deemed to have accepted the written terms and conditions provided by the issuer upon subsequent actual use of the credit card." Nev. Rev. Stat. § 97A.140(2). Nevada law also permits the issuer to "unilaterally change any term or condition for the use of a credit card without prior written notice to the

cardholder unless the change will adversely affect or increase the costs to the cardholder for the use of the credit card." Nev. Rev. Stat. § 97A.140(4).

The Original Agreement is enforceable based on application of Nevada law and the agreed-upon contractual terms. Because plaintiff actually used the credit card after receipt, he was bound by the terms of the Original Agreement. See Nev. Rev. Stat. § 97A.140(2).

The Revised Agreement is also enforceable. Credit One was authorized to unilaterally change the Account's terms under Nevada statute because the modification did not affect costs to the cardholder for the use of the card. See Nev. Rev. Stat. § 97A.140(4). Plaintiff did not attempt to opt-out of the terms of the Revised Agreement, as permitted by the plain language of the arbitration clause modification. Thus, plaintiff is also bound by the Revised Agreement's arbitration clause, which delegated the responsibility for determining validity of the agreement and arbitrability of particular disputes to the arbitrator.

The precedent relied on by plaintiff does not govern the outcome in this case. See Shea v. Household Bank (SB), Nat'l Ass'n, 129 Cal. Rptr. 2d 387, 390 (Ct. App. 2003). In Shea, the California Court of Appeals found the plaintiff had attempted to opt-out of the revised contract because he had contacted the bank to reject the modified terms. Ibid. The Shea court refused to enforce the

10

contract because it contravened California public policy by requiring immediate payment of the entire outstanding balance before the plaintiff could reject revisions to the contract. Id. at 391. Shea does not dictate the outcome here because it is undisputed plaintiff made no attempt to reject the Revised Agreement and was not required to pay the outstanding balance in full in order to reject the Revised Agreement's terms.

III.

Although we discern no error in the order compelling arbitration, we reverse the portion of the order dismissing plaintiff's complaint and remand for entry of an order staying any further action in the Law Division pending arbitration in accordance with prevailing law. Under the FAA, if parties are referred to arbitration in "any suit or proceeding," the court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3; see also Smith v. Spizzirri, 601 U.S. 472, 475-76 (2024) (holding a dispute subject to arbitration should be stayed upon request and a court lacks discretion to dismiss the suit because "shall" under 9 U.S.C. § 3 "creates an obligation impervious to judicial discretion"); Perez v. Sky Zone LLC, 472 N.J. Super. 240,

11

251 (App. Div. 2022) (citing 9 U.S.C. § 3; N.J.S.A. 2A:23B-7(g)) ("Under the FAA . . . , a court must stay an arbitrable action pending the arbitration.").

We decline to address plaintiff's argument asserting he will establish the Original Agreement is void under the CFLA. Not only is the alleged CFLA violation an arbitrable issue under the Revised Agreement, but plaintiff first referenced the argument in a footnote in his merits brief, see Sullivan v. Port Auth. of N.Y. and N.J., 449 N.J. Super. 276, 281 (App. Div. 2017) (declining to address arguments made only in footnotes), and only substantively addressed the issue in his reply brief. See Fuhrman v. Mailander, 466 N.J. Super. 572, 599 (App. Div. 2021) (citing Drinker Biddle & Reath LLP v. N.J. Dep't of L. & Pub. Safety, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011)) (noting "[a] matter raised for the first time in a reply brief need not be addressed by this court"). Any other arguments we have not addressed lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, reversed in part, and remanded for the limited purpose of entering an order staying the case pending arbitration. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-3399-24