## MICHAEL ATTILIO MANGARELLA, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 35212

February 16, 2001

17 P.3d 989

*Morgan D. Harris,* Public Defender, and *Bita Khamsi,* Deputy Public Defender, Clark County, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Stewart L. Bell,* District Attorney, and *James Tufteland,* Chief Deputy District Attorney, Clark County, for Respondent.

Before YOUNG, ROSE and BECKER, JJ.

## OPINION

*Per Curiam:*

In this appeal, Michael Attilio Mangarella challenges the constitutionality of NRS 176A.410, which imposes mandatory conditions of probation on individuals sentenced to probation after having been convicted of certain sexual offenses. Mangarella contends that (1) the statute's polygraph requirement is overbroad, thereby infringing upon his privilege against self-incrimination, and (2) the statute is unconstitutionally vague because it does not adequately define residence, work, and curfew requirements.

We conclude that because NRS 176A.410 does not allow an unbridled examination of the probationer, the statute is not unconstitutionally overbroad. Further, we hold that NRS 176A.410 is not unconstitutionally vague. Accordingly, we affirm the district court's judgment of conviction.

### FACTS

On September 2, 1999, Mangarella pleaded guilty to one count of lewdness with a minor pursuant to *North Carolina v. Alford.*[1] The district court sentenced Mangarella to serve a minimum of 36 months to a maximum of 120 months in the Nevada State Prison. Mangarella's sentence was suspended and he was placed on probation for a term not to exceed five years. The district court, over Mangarella's objection, imposed the probation conditions required by NRS 176A.410. NRS 176A.410(1) provides, in relevant part, that:

> Except as otherwise provided in subsection 2, if a defendant is convicted of a sexual offense and the court grants probation or suspends the sentence, the court shall, in addition to any other condition ordered pursuant to NRS 176A.400, order as a condition of probation or suspension of sentence that the defendant:
>
> (a) Reside at a location only if it has been approved by the parole and probation officer assigned to the defendant;
>
> (b) Accept a position of employment only if it has been approved by the parole and probation officer assigned to the defendant;
>
> (c) Abide by any curfew imposed by the parole and probation officer assigned to the defendant;
>
> . . . .
>
> (e) Submit to periodic tests to determine whether the defendant is using a controlled substance and submit to peri-

---

[1]400 U.S. 25, 37 (1970).

odic polygraphic examinations, as requested by the parole and probation officer assigned to the defendant[.]

## DISCUSSION

Mangarella challenges the constitutionality of NRS 176A.410 on three separate grounds. First, Mangarella contends that the provision in the statute relating to polygraph examinations is overbroad because it would permit a probation officer to ask questions about topics unrelated to a defendant's probation. Next, Mangarella argues that requiring a probationer to submit to polygraph examinations violates his Fifth Amendment privilege against self-incrimination. Finally, Mangarella asserts that the failure of the statute to specify guidelines for what constitutes appropriate employment, curfews or residences results in unconstitutional vagueness.

I. *Whether NRS 176A.410(1)(e) is unconstitutionally overbroad because the polygraph requirement does not specify the scope of questioning*

NRS 176A.410(1)(e) states that, as a condition of probation, the defendant shall ''[s]ubmit to periodic tests to determine whether the defendant is using a controlled substance and submit to periodic polygraph examinations, as requested by the parole and probation officer assigned to the defendant.''

Statutes should be given their plain meaning and ''must be construed as a whole and not be read in a way that would render words or phrases superfluous or make a provision nugatory.''[2] In addition, there is a presumption that every word, phrase, and provision in the enactment has meaning.[3]

The parties suggest three possible interpretations of the polygraph subsection. We address these interpretations from least to most expansive, starting with the State's interpretations.

First, the State asserts that the subsection authorizes polygraph testing to monitor controlled substance usage. In light of the placement of the polygraph testing condition in the same subsection as the requirement that the defendant submit to testing for drug use, it is plausible that the legislature intended for the probation officer to only use polygraph testing to monitor drug usage.

The State also argues that the subsection allows questioning

---

[2]*Charlie Brown Constr. Co. v. Boulder City,* 106 Nev. 497, 502, 797 P.2d 946, 949 (1990).

[3]*Id.* at 502-03, 797 P.2d at 949.

regarding compliance with any condition of probation. The subsection is part of the required probation conditions for sex offenders. Therefore, it is reasonable to assume that the legislature intended that probation officers use polygraph testing to monitor the probationer's compliance with all of his or her conditions of probation.

Finally, Mangarella proposes a third interpretation. Mangarella argues that because NRS 176A.410(1)(e) sets forth no parameters to the polygraph questioning, a probation officer may ask questions on any subject that has no reasonable relation to the probationer's offense. Mangarella reads the subsection as authorizing two separate tests: controlled substance and polygraph. This interpretation is also reasonable.

Because NRS 176A.410(1)(e) is subject to more than one reasonable interpretation, the statute is ambiguous as to the scope of questioning permitted in polygraph examinations.[4] While we normally review ambiguous statutes in light of legislative intent and public policy, different rules of statutory construction apply to penal statutes.

Generally speaking, we narrowly construe ambiguous provisions of penal statutes.[5] Moreover, the rules of statutory interpretation that apply to penal statutes require that provisions which negatively impact a defendant must be strictly construed, while provisions which positively impact a defendant are to be given a more liberal construction.[6] Applying these rules to NRS 176A.410(1)(e), we hold that the scope of the polygraph examination must be limited to questions relating to the use of controlled substances by the defendant. Thus, the statute is not unconstitutionally overbroad, as it does not permit a probation officer to conduct a polygraph examination on any issue.

## II. Constitutionality under the Fifth Amendment

Mangarella also contends that NRS 176A.410(1)(e) is unconstitutional because it would require defendants to answer questions that could tend to incriminate themselves in violation of the Fifth Amendment of the United States Constitution. Whenever

---

[4]See McKay v. Bd. of Supervisors, 102 Nev. 644, 649, 730 P.2d 438, 442 (1986) (citing Robert E. v. Justice Court, 99 Nev. 443, 664 P.2d 957 (1983)).

[5]Carter v. State, 98 Nev. 331, 334-35, 647 P.2d 374, 376 (1982).

[6]State v. Wheeler, 23 Nev. 143, 152, 44 P. 430, 431-32 (1896).

possible, we must interpret statutes so as to avoid conflicts with the federal or state constitutions.[7]

The Fifth Amendment provides, in part, that no person "shall be compelled in any criminal case to be a witness against himself."[8] The United States Supreme Court has held that this prohibition is not limited to circumstances where a defendant refuses to testify against himself at a criminal trial. A person is privileged "not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings."[9]

Persons who have been convicted of crimes only lose their Fifth Amendment protections as to the facts and circumstances of the crime for which they have been convicted. The privilege is still applicable to questions relating to any other activity.[10] The protection is therefore available for convicted offenders who have been granted probation. A defendant's probation may not be revoked simply because he or she has asserted the privilege against self-incrimination in response to questions from a probation officer. A state may require that a probationer truthfully answer questions posed by probation officers or other law enforcement personnel and impose sanctions if questions are not answered truthfully, but a state may not revoke probation because the probationer validly asserts the privilege.[11]

We have not had the opportunity to evaluate the constitutionality of requiring submission to polygraph examinations as a condition of probation. It is a matter of first impression in Nevada. Mangarella argues that compelling a probationer to answer questions in a polygraph violates the privilege against self-incrimination. We disagree.

Mangarella cites to State v. Eccles,[12] in support of his argument. In Eccles, the sentencing court required that, as a condition of probation, the defendant submit to polygraph questioning and waive his Fifth Amendment privilege against self-incrimination. The Arizona Supreme Court, however, struck the waiver condition pursuant to Murphy. The court removed the waiver condition

---

[7]See Summitt v. State, 101 Nev. 159, 161, 697 P.2d 1374, 1376 (1985) (quoting State v. Woodbury, 17 Nev. 337, 356, 30 P. 1006, 1012 (1883)).

[8]U.S. Const. amend. V.

[9]Lefkowitz v. Turley, 414 U.S. 70, 77 (1973).

[10]See Baxter v. Palmigiano, 425 U.S. 308, 316 (1976).

[11]Minnesota v. Murphy, 465 U.S. 420, 438 (1984).

[12]877 P.2d 799 (Ariz. 1994).

and stated, "The condition thus sanitized would read: as a 'critical part of the Sexual Offender Treatment Program,' defendant must agree to 'answer[ ] truthfully, any questions [asked by] the probation officer, counselors, polygraph examiners, or any other agent of the Probation Department's treatment programs.' "[13]

Mangarella fails to recognize that the constitutional violation in *Eccles* was the requirement that the defendant waive his Fifth Amendment privilege, not the requirement that he submit to polygraph examinations. Nothing in *Murphy* or *Eccles* can be read to prohibit a state from requiring a probationer to submit to a polygraph examination. Moreover, we do not interpret NRS 176A.410(1)(e) as requiring a waiver of the Fifth Amendment privilege against self-incrimination.

Unlike the statute at issue in *Eccles,* NRS 176A.410(1)(e) is silent as to waiver. In light of the constitutional privilege against self-incrimination, we interpret the statute as allowing a valid assertion of the privilege against self-incrimination if the probationer encounters a situation where he is asked for incriminating statements regarding crimes for which he has not been convicted.

Because we do not interpret NRS 176A.410(1)(e) as requiring a waiver of the privilege against self-incrimination, the statute is not unconstitutional.

III.   *Whether NRS 176A.410 is unconstitutionally vague because it does not define what type of residence, work, and curfew are appropriate*

Mangarella contends that NRS 176A.410 is unconstitutionally vague because it does not provide adequate guidelines to a probation officer of what are appropriate or inappropriate places of residence, places of work, or hours for curfew. A probation officer would then have the discretion to impose conditions that are arbitrary, capricious or discriminatory.

Mangarella relies on *State of Nevada v. Father Richard,*[14] where this court determined:

> A vague law is one which fails to provide persons of ordinary intelligence with fair notice of what conduct is prohibited and also fails to provide law enforcement officials with adequate guidelines to prevent discriminatory enforcement.

Mangarella contends that NRS 176A.410 violates *Father Richard* because it sets no standards for determining what places

---

[13]*Id.* at 801.

[14]108 Nev. 626, 629, 836 P.2d 622, 624 (1992).

of residence, places of work, and curfews are prohibited. This would leave the probationer subject to harassment or unfair restrictions. For example, the probation officer may refuse to grant permission for a defendant to work at a casino because of the probation officer's personal belief that gambling is wrong. In another example, the probation officer might require the defendant to work in one section of town and live in a completely different area just for the purpose of making it difficult for the defendant to get to work.

Constitutional vagueness is determined by the terms of the statute in question and Mangarella cites no authority for the proposition that a statute is vague simply because it gives a broad grant of authority. The provisions relating to residence, employment and curfew contained in NRS 176A.410 cannot be read in a vacuum. These requirements must be read in conjunction with the fact that the restrictions are imposed upon individuals convicted of sexual offenses. Therefore, the supervising probation officer must set requirements that reasonably relate to the purpose of the statute.

Residence, work and curfew restrictions are imposed to ensure that the defendant is not living or working in circumstances that would undermine his rehabilitation or provide him with increased access to potential victims. They must be reasonably related to rehabilitation or the health, safety or welfare of the community.[15]

In assessing the constitutional issues, we are also mindful of the additional protections that are available to a probationer to ensure that the provisions of the statute will not be used for improper purposes. If a probationer believes that he or she is being improperly treated, the probationer can request review of the restrictions by other officials in the department of parole and probation or the sentencing court. Moreover, the probation officer cannot unilaterally revoke a defendant's probation. Thus, the issue of the propriety of the curfew, residence or work restrictions could also be raised before a court in any revocation proceedings.

Accordingly, because a person of common intelligence need not guess as to the statute's meaning and the statute must be read to further the special needs inherent in supervising sexual offenders, we hold that NRS 176A.410(1)(a)-(c) is not unconstitutionally vague.

## CONCLUSION

We hold that NRS 176A.410 is neither unconstitutionally

---

[15]See *Seim v. State,* 95 Nev. 89, 93, 590 P.2d 1152, 1154 (1979); NRS 176A.400.

vague, nor overbroad. Accordingly, we affirm the district court's judgment of conviction.