**134 Nev., Advance Opinion 96**
IN THE SUPREME COURT OF THE STATE OF NEVADA

THE STATE OF NEVADA,
Petitioner,
vs.
THE SECOND JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
WASHOE; AND THE HONORABLE
CONNIE J. STEINHEIMER, DISTRICT
JUDGE,
Respondents,
  and
MATTHEW GLENN HEARN,
Real Party in Interest.

No. 73475

FILED

DEC 06 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Original petition for writ of mandamus or prohibition challenging a district court order striking language within NRS 176A.290(2) as unconstitutional.

*Petition denied.*

Adam Paul Laxalt, Attorney General, Carson City; Christopher J. Hicks, District Attorney, Terrence P. McCarthy, Chief Appellate Deputy District Attorney, and Rebecca Carol Druckman, Deputy District Attorney, Washoe County,
for Petitioner.

John L. Arrascada, Public Defender, John Reese Petty, Chief Deputy Public Defender, and Kendra G. Bertschy, Deputy Public Defender, Washoe County,
for Real Party in Interest.

BEFORE THE COURT EN BANC.

18-907303

*OPINION*

By the Court, STIGLICH, J.:

NRS 176A.290 (2014) authorizes district courts to assign certain eligible defendants to a veterans court program.[1] However, if the offense charged or the defendant's prior convictions involved the use or threatened use of force or violence, the district court is not allowed to assign the defendant to the veterans court program, "unless the prosecuting attorney stipulates to the assignment." NRS 176A.290(2).

The district court found that NRS 176A.290(2) was in effect a prosecutorial veto over a judge's sentencing decision, in violation of the Nevada Constitution's separation of powers doctrine. Nev. Const. art. 3, § (1)(1). The district court further held that the veto provision was severable. We agree on both points. Accordingly, we deny the State's petition.

## *FACTUAL AND PROCEDURAL HISTORY*

Matthew Glenn Hearn was charged with and pleaded guilty to battery by a prisoner, a category B felony, in violation of NRS 200.481(2)(f). A specialty courts officer deemed Hearn eligible for the veterans court program because he was a veteran who "appears to have a mental illness, substance abuse, or posttraumatic stress disorder which appears to be related to military service."

---

[1]NRS 176A.290 was amended in 2017. *See* 2017 Nev. Stat., ch. 484, § 5, at 3021. The district court relied upon the version that became effective on January 1, 2014. *See* 2013 Nev. Stat., ch. 384, §§ 1.5, 3, at 2093-94. We apply the 2014 version throughout this opinion, but we note that our analysis and holding apply equally to the current version of the statute, which was not substantively changed by the 2017 amendment.

 

At sentencing, the State refused to stipulate to Hearn's assignment to veterans court pursuant to NRS 176A.290(2), which prompted Hearn to ask the court to find the statute unconstitutional. The district court obliged, finding that "NRS 176A.290(2) violates the separation of powers doctrine by conditioning the judicial department's discretion to place certain offenders into a treatment program on the prosecutor's (discretionary) stipulation." It further found that the statute was severable and struck the unconstitutional language from the statute. The State challenges that decision in the present writ petition.

## DISCUSSION

### Propriety of writ relief

The decision to consider a writ of mandamus lies within the sole discretion of this court. *Smith v. Eighth Judicial Dist. Court*, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991). As an extraordinary remedy, writ relief is generally available only when no "plain, speedy and adequate" legal remedy exists. *Cote H. v. Eighth Judicial Dist. Court*, 124 Nev. 36, 39, 175 P.3d 906, 908 (2008) (internal quotation marks omitted). This court has exercised its discretion to intervene to clarify "important legal issue[s] in need of clarification" or "in the interest of judicial economy and to provide guidance to Nevada's lower courts." *State, Office of the Attorney General v. Justice Court (Escalante)*, 133 Nev. 78, 80, 392 P.3d 170, 172 (2017). And a writ of mandamus is the proper remedy "to control a manifest abuse or arbitrary or capricious exercise of discretion." *State v. Eighth Judicial Dist. Court (Armstrong)*, 127 Nev. 927, 931, 267 P.3d 777, 779 (2011).

Both parties agree that the constitutionality of NRS 176A.290(2) is an "important legal issue in need of clarification." *Escalante*, 133 Nev. at 80, 392 P.3d at 172. They also contend that Nevada's district courts are resolving this issue inconsistently, so our intervention is

SUPREME COURT
OF
NEVADA

(O) 1947A

3

necessary "to provide guidance to Nevada's lower courts." *Id.* Finally, the State argues that it has no adequate remedy in law to challenge the district court's decision. We agree on all points and exercise our discretion to consider the State's petition for a writ of mandamus.[2]

*Statutory background*

NRS 176A.280 et seq. authorized the establishment of specialty courts for veterans and military members who have been charged with probation-eligible offenses. When certain criteria are met, a district court has discretion to assign eligible defendants to a specialty court program. NRS 176A.290.[3] The program benefits defendants like Hearn by suspending further criminal proceedings and placing them on probation. *Id.* Upon successful completion of the program, the charges are dismissed. NRS 176A.290(4).

Not all veterans or service members, however, are eligible for assignment to veterans court. NRS 176A.287(1). For example, a defendant who "[h]as previously been assigned to such a program" is not eligible for assignment. NRS 176A.287(1)(a). At issue in this case is NRS 176A.290(2), which provides that a district court may not assign a defendant to such a program without the prosecutor's agreement when an offense charged or

---

[2]The State alternatively requests a writ of prohibition. A writ of prohibition is inappropriate because the district court had jurisdiction to rule on the constitutionality of NRS 176A.290(2). *See Goicoechea v. Fourth Judicial Dist. Court,* 96 Nev. 287, 289, 607 P.2d 1140, 1141 (1980) (explaining that a writ of prohibition will not lie if the court "had jurisdiction to hear and determine the matter under consideration").

[3]This statute was amended after Hearn was deemed eligible for the program but prior to his sentencing date. *See* 2017 Nev. Stat., ch. 484, § 4, at 3020. The minor changes to the statutory scheme do not affect his eligibility.

the defendant's prior convictions involved the use or threatened use of force or violence:

> If the offense committed by the defendant involved the use or threatened use of force or violence or if the defendant was previously convicted in this State or in any other jurisdiction of a felony that involved the use or threatened use of force or violence, the court may not assign the defendant to the program *unless the prosecuting attorney stipulates to the assignment.*

(Emphasis added.) The district court believed that the emphasized language requiring the prosecutor's agreement amounted to an unconstitutional prosecutorial veto over the judiciary's sentencing decision. It struck that language, leaving the rest of the statute intact.

*Constitutionality of the prosecutorial consent element*

The first issue is whether NRS 176A.290(2) violates Nevada's separation of powers doctrine. "The constitutionality of a statute is a question of law, which this court reviews de novo." *Aguilar-Raygoza v. State*, 127 Nev. 349, 352, 255 P.3d 262, 264 (2011).

As with the United States Constitution, the structure of our state constitution gives rise to the separation of powers doctrine through its "discrete treatment of the three branches of government." *Comm'n on Ethics v. Hardy*, 125 Nev. 285, 292, 212 P.3d 1098, 1103 (2009). But "Nevada's Constitution goes one step further; it contains an express provision prohibiting any one branch of government from impinging on the functions of another." *Id.* at 292, 212 P.3d at 1103-04; *see* Nev. Const. art. 3, § 1(1).

In *Stromberg v. Second Judicial District Court*, this court analyzed Nevada's separation of powers doctrine within the context of sentencing decisions. 125 Nev. 1, 2-3, 200 P.3d 509, 510 (2009). *Stromberg*

concerned a statute that allowed a district court to treat a defendant's third DUI offense as if it were the defendant's second DUI offense "if the offender successfully completes a treatment program." *Id.* at 3, 200 P.3d at 510. The State contended that this statute violated the separation of powers doctrine by infringing upon the prosecutor's power to determine how to charge a DUI offender. *Id.* at 6, 200 P.3d at 512. This court rejected that argument by distinguishing "between the prosecutor's decision in how to charge and prosecute a case and the court's authority to dispose of a case after its jurisdiction has been invoked." *Id.* at 7, 200 P.3d at 512. That is, the prosecutor retained the power to charge an offender for a third DUI offense; the statute merely gave district courts the option to *sentence* such offenders to a treatment program. *Id.* at 8, 200 P.3d at 513. Such sentencing decisions, we concluded, "properly fall[ ] within the discretion of the judiciary." *Id.* Thus, *Stromberg* indicates that charging decisions are within the executive realm and sentencing decisions are inherently judicial functions.

We recognize that a district court's sentencing decision is necessarily limited by the Legislature's power to define the parameters of punishments, "within constitutional limits." *Goudge v. State*, 128 Nev. 548, 554, 287 P.3d 301, 304 (2012). And we reiterate that the Legislature can "completely remove any judicial discretion to determine a criminal penalty by creating mandatory sentencing schemes." *Mendoza-Lobos v. State*, 125 Nev. 634, 640, 218 P.3d 501, 505 (2009). However, we agree with other jurisdictions that a court's sentencing discretion, once granted, cannot be conditioned upon the prosecution's approval without running afoul of the separation of powers doctrine. *See, e.g., State v. Prentiss*, 786 P.2d 932, 936 (Ariz. 1989) ("But once the legislature provides the court with the power to

use sentencing discretion, the legislature cannot then limit the court's exercise of discretion by empowering the executive branch to review that discretion."); *People v. Navarro*, 497 P.2d 481, 489 (Cal. 1972) ("[A]lthough the Legislature was not required in the first instance to give the court power to commit persons in the status of [the defendant] to the treatment program, having conferred this power it cannot condition its exercise upon the approval of the district attorney."); *State v. Olson*, 325 N.W.2d 13, 18 (Minn. 1982) ("But once the legislature has prescribed the punishment for a particular offense it cannot, within constitutional parameters, condition the imposition of the sentence by the court upon the prior approval of the prosecutor."). To be certain, statutory schemes vary from state to state. But the principle gleaned is that once a defendant's guilt has been determined, the prosecutor's charging discretion is complete and the judiciary's sentencing discretion, if any, is all that remains. *See State v. Ramsey*, 831 P.2d 408, 412 (Ariz. Ct. App. 1992) ("Once the prosecutor has pursued and obtained a guilty verdict, the executive role in the resolution of the criminal action is limited constitutionally.").[4]

Returning to the case at hand, a court's decision to assign a defendant to the veterans court program is a sentencing decision—it is a statutorily approved alternative to entering a judgment of conviction and imposing a term of incarceration. And as we indicated in *Stromberg*, sentencing decisions are "within the discretion of the judiciary." 125 Nev.

---

[4]We note that in this matter, as in *Stromberg*, 125 Nev. at 2-3, 200 P.3d at 510, we are asked to consider the district court's sentencing discretion after a determination of guilt has been made.

at 8, 200 P.3d at 513.[5] In requiring that a prosecutor stipulate to the district court's decision, the effect of NRS 176A.290(2) is to afford an executive veto over a judicial function. We recognize that the statute operates in a seemingly atypical fashion, but any prosecutorial power over the district court's disposition at this stage of the proceedings is offensive to the separation of powers.[6] *See Navarro*, 497 P.2d at 488-89 (finding a violation of the separation of powers doctrine where a statute required agreement by the prosecutor before the court could assign the defendant to a treatment program and reiterating "that the Legislature, of course, by *general laws* can control eligibility for probation, parole and the term of imprisonment, but it cannot abort the *judicial process* by subjecting a judge to the control of the district attorney" (internal quotation marks omitted)); *cf. People v. Andreotti*, 111 Cal. Rptr. 2d 462, 468-69 (Ct. App. 2001) (concluding a prosecutor's motion for deferral was akin to plea bargaining but acknowledging that "[o]nce the defendant pleads guilty and the prosecutor moves for deferral, the decision of how to dispose of the charges is in the hands of the judge, where it belongs" and that "[i]f the [prosecution] had some sort of veto over *this* decision by the trial court," then the statute

---

[5]Hearn was before the district court for disposition after his guilt had been established. *See People v. Superior Court of San Mateo Cty.*, 520 P.2d 405, 410 (Cal. 1974) ("It is true that acquittal or sentencing is the typical choice open to the court, but in appropriate cases it is not the only termination. With the development of more sophisticated responses to the wide range of anti-social behavior traditionally subsumed under the heading of 'crime,' alternative means of disposition have been confided to the judiciary.").

[6]Of particular note in this matter is that the prosecutor was granted unreviewable power for which the statute provided no guidance in exercising.

would violate the separation of powers doctrine). Thus, we hold that the prosecutorial veto within NRS 176A.290 violates the Nevada Constitution's prohibition against one branch of government "exercis[ing] any functions, appertaining to either of the others." Nev. Const. art. 3, § 1(1).

*Severability*

The next issue is how to remedy NRS 176A.290(2)'s unconstitutionality. We must determine whether the statute is severable, i.e., whether "it is possible to strike only the unconstitutional provision[ ]." *Sierra Pac. Power Co. v. State, Dep't of Taxation*, 130 Nev. 940, 945, 338 P.3d 1244, 1247 (2014) (internal quotation marks omitted), *cert. denied*, ___ U.S. ___, 136 S. Ct. 792 (2016). To resolve that issue, we analyze "whether the remainder of the statute, standing alone, can be given legal effect, and whether preserving the remaining portion of the statute accords with legislative intent." *Id.*; *see also* NRS 0.020(1).

The district court struck "unless the prosecuting attorney stipulates to the assignment" and found that the remainder of the statute accorded with the legislative intent behind NRS 176A.290(2) and its associated statutes. We agree. The Legislature enacted NRS 176A.280 et seq. to provide veterans and military members "with an alternative to incarceration and [to] permit[ ] them to access proper treatment for mental health and substance abuse problems resulting from military service." 2009 Nev. Stat., ch. 44, at 100. The Legislature recognized that many veterans suffer from "combat-related injuries" that "can lead to encounters with the criminal justice system which would not have otherwise occurred." *Id.* Thus, to "enable the criminal justice system to address the unique challenges veterans and members of the military face as a result of their honorable service," the Legislature authorized "[t]he establishment of specialty treatment courts for veterans and members of the military *who*

SUPREME COURT
OF
NEVADA

(O) 1947A

9

*are nonviolent offenders." Id.* (emphasis added). This language indicates that the *primary* intended beneficiaries of the veterans court are "nonviolent offenders." *Id.* The fact that the Legislature provided for the admittance of some violent offenders, pursuant to prosecutorial stipulation, indicates there was a secondary goal of allowing some violent offenders the benefit of the veterans court. However, the remaining language after severance accords with the Legislature's primary intent.

The district court believed that after striking the offending language it would have the discretion to send a violent offender to veterans court. It is here that we part ways with the district court. With the offending language stricken, the statute now states that, for defendants who have been charged with or have a prior felony conviction for a crime involving "the use or threatened use of force or violence, the court may not assign the defendant to the program." NRS 176A.290(2). Thus the legal effect of this severance is to render all offenders deemed violent by a court ineligible for the veterans court program.[7]

---

[7]The concurrence seems to agree with the district court. However, NRS 0.025(1)(b) provides that "'[m]ay not' . . . abridges or removes a right, privilege or *power*." (Emphasis added.) And while the use of the word "may" is generally permissive, *see Nev. Pub. Emps. Ret. Bd. v. Smith*, 129 Nev. 618, 627, 310 P.3d 560, 566 (2013), the use of the word "not" disallows discretion. Indeed, the structure of the statute at issue ("may not" followed by "unless") supports our interpretation that "may not" disallows discretion because the use of the word "unless" would be meaningless if "may not" was discretionary. *See Hobbs v. State*, 127 Nev. 234, 237, 251 P.3d 177, 179 (2011) (recognizing that this court "avoid[s] statutory interpretation that renders language meaningless or superfluous").

SUPREME COURT
OF
NEVADA

(O) 1947A

While we recognize that severing the language allowing a violent offender to be assigned to the program upon the prosecutor's agreement impedes the Legislature's secondary goal of allowing some violent offenders to be assigned to the veterans court, it is for the Legislature, not this court, to remedy this impediment. Our goal in severing is merely to determine whether the remainder of the statute can be given legal effect such that it comports with legislative intent. Having concluded that the remaining language in NRS 176A.290(2) conforms with the stated intent of establishing veterans courts for nonviolent offenders and providing guidance to the courts in determining whether the charged offense or the defendant's prior felony convictions make the defendant ineligible,[8] we conclude that severance of the prosecutorial-stipulation provision is proper. Therefore, the district court did not manifestly abuse or arbitrarily or capriciously exercise its discretion in arriving at the same conclusion, and a writ of mandamus will not issue. *See Armstrong*, 127 Nev. at 931-32, 267 P.3d at 780 ("An arbitrary or capricious exercise of discretion is one founded on prejudice or preference rather than on reason, or contrary to the evidence or established rules of law." (citation and internal quotation marks omitted)).

---

[8]What constitutes a violent offense is still a determination left to the district court. The remainder of subsection 2 allows the court to decide whether the offense "involved the use or threatened use of force or violence" and provides guidance in making that decision by directing the court to "consider the facts and circumstances surrounding the offense." NRS 176A.290(2). In particular, the courts are required to consider "whether the defendant intended to place another person in reasonable apprehension of bodily harm." *Id*.

## CONCLUSION

Nevada's separation of powers doctrine is violated when a prosecutor is granted veto power over a district court's sentencing decision. Because NRS 176A.290(2) does precisely that, the district court correctly deemed it unconstitutional. The district court also correctly determined that the following language within NRS 176A.290(2) is severable: "unless the prosecuting attorney stipulates to the assignment."[9] Accordingly, we deny the State's petition.

_____, J.
Stiglich

We concur:

_____, J.
Cherry

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

---

[9]For the reason described in note 1, *supra*, this holding applies to both the 2014 and 2017 versions of the statute.




DOUGLAS, C.J., concurring:

The district court correctly determined that the prosecutor does not have an executive veto power over the judiciary pursuant to NRS 176A.290(2); however, the court—as well as my colleagues—commits the mistake of relying on the separation of powers doctrine to reach this conclusion, while not first looking to the specific statutory language. The statutory language here is permissive, and thus, the district court retained the discretion to assign Hearn to the specialty program without the prosecuting attorney's stipulation to the assignment.

We have consistently held "that we should avoid considering the constitutionality of a statute unless it is *absolutely necessary* to do so." *Sheriff v. Andrews*, 128 Nev. 544, 546, 286 P.3d 262, 263 (2012) (emphasis added); *accord State v. Curler*, 26 Nev. 347, 354, 67 P. 1075, 1076 (1902) (noting that "it is a well-established rule of this and other courts that constitutional questions will never be passed upon, except when absolutely necessary to properly dispose of the particular case"). Indeed, on at least one occasion, we have declined to consider the constitutionality of a statute when principles of statutory construction resolved the case. *See Anthony Lee R. v. State*, 113 Nev. 1406, 1417 n.6, 952 P.2d 1, 8 n.6 (1997). As demonstrated below, such is the case here.

When interpreting statutes, "if the language of a statute is clear on its face, we will ascribe to the statute its plain meaning and not look beyond its language." *Koller v. State*, 122 Nev. 223, 226, 130 P.3d 653, 655 (2006) (internal quotation marks omitted). Additionally, this court gives effect and "meaning to all words, phrases, and provisions of a statute." *Haney v. State*, 124 Nev. 408, 412, 185 P.3d 350, 353 (2008). Furthermore "every reasonable construction must be resorted to in order to save a statute

from unconstitutionality." *State v. Castaneda*, 126 Nev. 478, 481, 245 P.3d 550, 552, *opinion modified on denial of reh'g* (2010) (quoting *Hooper v. California*, 155 U.S. 648, 657 (1895)); *accord Virginia & Truckee R.R. Co. v. Henry*, 8 Nev. 165, 174 (1873) ("It requires neither argument nor reference to authorities to show that when the language of a statute admits of two constructions, one of which would render it constitutional and valid and the other unconstitutional and void, that construction should be adopted which will save the statute."). "Moreover, the rules of statutory interpretation that apply to penal statutes require that provisions which negatively impact a defendant must be strictly construed, while provisions which positively impact a defendant are to be given a more liberal construction." *Mangarella v. State*, 117 Nev. 130, 134, 17 P.3d 989, 992 (2001) ("[a]pplying these rules to NRS 176A.410(1)(e)" to hold that the statute was not unconstitutionally overbroad because "the scope of polygraph examination must be limited to questions relating to the use of controlled substances by the defendant" and the statute "does not permit a probation officer to conduct a polygraph examination on any issue").

As noted by the majority, NRS 176A.290(2) provides in part:

> If the offense committed by the defendant involved the use or threatened use of force or violence or if the defendant was previously convicted in this State or in any other jurisdiction of a felony that involved the use or threatened use of force or violence, the district court, justice court or municipal court, as applicable, *may not* assign the defendant to the program unless the prosecuting attorney stipulates to the assignment.

(Emphasis added.) The majority concludes that this affords an executive veto power over the judiciary because it requires that a prosecutor stipulate to the district court's decision. Majority opinion *ante* at 8. "But this reading

Supreme Court
OF
Nevada

(O) 1947A

2

ignores the statute's use of the permissive 'may.'" *Nev. Pub. Emps. Ret. Bd. v. Smith*, 129 Nev. 618, 627, 310 P.3d 560, 566 (2013). "It is a well-settled principle of statutory construction that statutes using the word 'may' are generally directory and permissive in nature, while those that employ the term 'shall' are presumptively mandatory." *Id.* (quoting *Nev. Comm'n on Ethics v. JMA/Lucchesi*, 110 Nev. 1, 9-10, 866 P.2d 297, 302 (1994)); *see also Barral v. State*, 131 Nev. 520, 523, 353 P.3d 1197, 1198 (2015) (holding that a district court has no discretion where the statute includes the term "shall").

NRS 176A.290(2) states that the court "may not assign the defendant to the program" without the prosecuting attorney's stipulation, but the statute does not state that the court "shall not" or "must not." The Legislature could have used the term "shall" to impose a duty on the courts to refrain from assigning a defendant to the program unless the prosecuting attorney stipulated to the assignment. *See* NRS 0.025(1)(d) (defining "shall" as "impos[ing] a duty to act"); *see also* 1A Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 21:8 (7th ed. 2009) ("When the action is mandatory 'shall' should always be employed. When the action is permissive "may" should be used."). Indeed, the Legislature has done so in other statutes. *See* NRS 16.110(1) ("After the [jury] instructions are given, the judge *shall not* clarify, modify or in any manner explain them to the jury except in writing unless the parties agree to oral instructions." (emphasis added)); NRS 176.0611(4) ("If a fine is determined to be uncollectible, the defendant is not entitled to a refund of the fine or administrative assessment the defendant has paid and the justice or judge *shall not* recalculate the administrative assessment." (emphasis added)). If there were any doubts, the sentence after the one relied upon here by the

majority demonstrates that the Legislature knew how to use "shall" instead of "may" when imposing an affirmative duty on the court:

> For the purposes of [NRS 176A.290(2)], in determining whether an offense involved the use or threatened use of force or violence, the district court, justice court or municipal court, as applicable, *shall consider* the facts and circumstances surrounding the offense, including, without limitation, whether the defendant intended to place another person in reasonable apprehension of bodily harm.

NRS 176A.290(2) (emphasis added).

Instead, the Legislature chose to state that the court "may not" assign defendants to the program without the prosecuting attorney's stipulation. As clarified by NRS 0.025(1)(b), the term "may not," unless expressly provided otherwise, "*abridges* or removes a right, privilege or power." (Emphasis added.) In the context of NRS 176A.290(2), I would interpret it as abridging the court's discretion to assign defendants to the program by requiring it to seek input from the prosecuting attorney when determining whether to assign a defendant to the program. However, it would not prevent the court from assigning defendants to the program if the prosecuting attorney does not so stipulate, so long as the court sought the input from the prosecuting attorney.

Such an interpretation would "save [the] statute from unconstitutionality," *Castaneda*, 126 Nev. at 481, 245 P.3d at 552 (internal quotation marks omitted), because the statute would not give the prosecuting attorney an executive veto over the judiciary. Indeed, we need

not reach the constitutionality of the statute, as traditional principles of statutory construction would resolve the case. *See Anthony Lee R.*, 113 Nev. at 1417 n.6, 952 P.2d at 8 n.6. Moreover, this interpretation is consistent with our prior holdings that penal statutes "which negatively impact a defendant must be strictly construed," *Mangarella*, 117 Nev. at 134, 17 P.3d at 992, as there is no doubt that requiring the prosecuting attorney to stipulate to the defendant's assignment to the program negatively impacts the defendant.

I agree with my colleagues that an executive veto over the judiciary in this case would violate the separation of powers doctrine. However, that is not what we have here. Because I believe the majority's logic ignores the language of the statute and reaches an unnecessary issue, I write separately and concur as to the result only.

_____, C.J.
Douglas

PICKERING, J., dissenting:

The Legislature has authorized a deferred sentencing program to treat defendants who are veterans or members of the military, known as veterans court. NRS 176A.280. After guilt is established, whether by guilty plea or other adjudication, the court suspends further proceedings, including entry of judgment, so the defendant can participate in the veterans court program. NRS 176A.290(1). If the defendant fails to complete the program, the court then enters the judgment of conviction and sentences the defendant conventionally. NRS 176A.290(3). But if the defendant successfully completes the program, "the court shall discharge the defendant and dismiss the proceedings." NRS 176A.290(4). With certain exceptions not relevant here, discharge and dismissal under this statute "is without adjudication of guilt and is not a conviction." *Id.*

The Legislature has placed a number of conditions on eligibility for veterans court, including that the defendant appears to suffer from a mental illness, substance abuse, brain injury, or posttraumatic stress disorder related to military service, or military sexual trauma, NRS 176A.280(1)(a)(1), (2); the defendant "[w]ould benefit from assignment to the program," NRS 176A.280(1)(b); the defendant has not been previously assigned to such a program, NRS 176A.287(1)(a); the defendant was honorably discharged unless extraordinary circumstances exist, NRS 176A.287(1)(b), (2); and the offense is probationable, NRS 176A.290(1).

The Legislature has further limited eligibility for veterans court based on the defendant's use of force or violence, as follows:

> If the offense committed by the defendant involved the use or threatened use of force or violence or if the defendant was previously convicted . . . of a felony that involved the use or threatened use of

> force or violence, the district court . . . may not assign the defendant to the program *unless the prosecuting attorney stipulates to the assignment.*

NRS 176A.290(2) (emphasis added). It is this provision that is at issue on this writ. The majority concludes that the italicized language—requiring prosecutorial stipulation before a veteran charged with, or who has a history of, violent crime can be assigned to veterans court—intrudes on judicial discretion and thus violates the separation of powers doctrine. To correct this perceived violation, the majority rewrites the statute to strike its italicized language. As a result, no veteran charged with or who has a history of violent crime can participate in veterans court going forward—even, presumably, in a case where both the district court and the prosecutor believe assignment is appropriate. As I disagree with both the reasoning and result, I respectfully dissent.

## I.

Matthew Hearn is a veteran of the United States Army, honorably discharged from service, with a diagnosis of posttraumatic stress disorder. He was charged with felony battery by a prisoner for the use of "force or violence upon the person of DEPUTY JAMES COOK by putting the victim in a headlock and strangling him." Hearn pleaded guilty. During the plea canvass, Hearn stated that he did not dispute the facts of the crime as charged.

After entry of his plea, Hearn applied for veterans court. A specialty courts officer sent a letter informing Hearn that he was eligible to participate in veterans court. The prosecutor subsequently informed Hearn that the State would not agree to Hearn's assignment to veterans court. Hearn then filed a motion to hold NRS 176A.290(2), in particular the provision relating to prosecutorial stipulation, unconstitutional as a

 

violation of the separation of powers. The district court agreed, finding that the provision requiring the prosecutor's stipulation for a violent offender to be eligible for veterans court violated the separation of powers doctrine. The district court then purported to sever the provision requiring the prosecutor's stipulation from the remainder of subsection 2 and held that "[w]ithout the offending language, the judiciary retains its discretion to assign or not assign the defendant to the program."

The State filed a petition for a writ of mandamus or prohibition challenging the district court's decision. Although the majority denies the State's writ petition, it reaches the exact opposite conclusion from the district court. In the majority's view, a defendant charged with, or who has a history of violent crime, is categorically ineligible for veterans court.

## II.

Article 3, Section 1(1) of the Nevada Constitution addresses the relationship between the three branches of State government:

> The powers of the Government of the State of Nevada shall be divided into three separate departments,—the Legislative,—the Executive and the Judicial; and no persons charged with the exercise of powers properly belonging to one of these departments shall exercise any functions, appertaining to either of the others, except in the cases expressly directed or permitted in this constitution.

This provision establishes that the three branches are separate and coequal, and each has powers related to its own functions. While observing that each branch "maintain[s] its separate autonomy," this court has recognized that there is some amount of overlap and interdependence. *Galloway v. Truesdell*, 83 Nev. 13, 21, 422 P.2d 237, 243 (1967).

(O) 1947A

## A.

One area of overlap and interdependence is implicated in this case—what penalty applies to a criminal offense. Establishing the penalty for a criminal offense is a legislative function. *Mendoza-Lobos v. State*, 125 Nev. 634, 639-40, 218 P.3d 501, 504-05 (2009). Deciding what penalty to impose in a given case is a judicial function. *Id.* The judicial function is constrained, however, by the related legislative function. For example, the Legislature may "completely remove any judicial discretion to determine a criminal penalty by creating mandatory sentencing schemes" or "mandat[e] factors to be considered by the courts when imposing a sentence." *Id.* at 640, 218 P.3d at 505. Similarly, "[t]he power to suspend [a] sentence and grant probation springs from legislative grant rather than from the inherent powers of the court." *Creps v. State*, 94 Nev. 351, 360, 581 P.2d 842, 848 (1978). So too does the power to place a defendant in a deferred sentencing program. *See Savage v. Third Judicial Dist. Court*, 125 Nev. 9, 16-17, 200 P.3d 77, 82 (2009) (recognizing that the Legislature authorized a DUI treatment program). Judicial power, on the other hand, "is the *authority* to hear and determine justiciable controversies." *Galloway*, 83 Nev. at 20, 422 P.2d at 242. And demonstrating this coordination of powers, judicial power naturally includes the imposition of a sentence within the limits set by the Legislature. *Mendoza-Lobos*, 125 Nev. at 639-40, 218 P.3d at 505.

The majority concludes that the Legislature may not condition eligibility for veterans court upon prosecutorial agreement because it affords the prosecutor a veto over a judicial function. Not so. The Legislature has set the parameters of eligibility for the program: a violent offender is not eligible for veterans court without prosecutorial stipulation.

 

This does not afford the prosecutor a veto but rather establishes a condition precedent to the district court's exercise of the discretion granted by the Legislature. The district court may not place a violent offender in the program without an agreement by the prosecutor (and the defendant for that matter, see NRS 176A.290(1)). These are the eligibility parameters established by the Legislature. Without them, a violent offender would not be eligible for veterans court at all. While the district court may exercise its discretion in sentencing within the bounds set by the Legislature, the district court has no authority to traverse the bounds or ignore the conditions on eligibility set by the Legislature.

This is no different than conditions the Legislature has placed on the district court's discretion to suspend a sentence and place a defendant on probation. For example, the Legislature has provided that defendants convicted of certain offenses shall not be placed on probation without a psychosexual evaluation certifying that the defendant is not a high risk to reoffend. NRS 176A.110(1). Without this certification, a district court has no discretion to place a defendant on probation. A condition precedent does nothing more than set the parameters of the district court's discretion.

## B.

The majority mistakenly relies upon *Stromberg v. Second Judicial District Court*, 125 Nev. 1, 200 P.3d 509 (2009), to conclude that the Legislature cannot condition assignment to veterans court upon prosecutorial agreement. Unlike the case before us today involving the tension between the legislative and judicial branches, *Stromberg* addressed the interplay between the executive and judicial branches. In *Stromberg*,

the State argued that former NRS 484.37941[1] violated the separation of powers in permitting the district court to accept a guilty plea to a third-offense DUI and, upon successful completion of the program, enter a conviction for a second-offense DUI over the State's objection. *Id.* at 6, 200 P.3d at 512. The State argued that this interfered with its exclusive power to charge a defendant. *Id.* This court rejected the separation-of-powers argument, noting that the district court's exercise of discretion in granting the application for treatment was "simply a choice between the legislatively prescribed penalties set forth in the statute" and does not limit the State's discretion to charge an offender with a third-offense DUI or a lesser offense. *Id.* at 8, 200 P.3d at 513. Insofar as this court recognized that the district court exercised its discretion within the parameters set by the Legislature, *Stromberg* correctly states the law.

However, *Stromberg* went on to conclude that the "court's decision to allow an offender to enter a program of treatment is analogous to the decision to sentence an offender to probation." *Id.* This is a false analogy. Assignment to veterans court is not analogous to sentencing. The assignment *defers* sentencing, and the successful completion of veterans court results in the dismissal of charges. NRS 176A.290(4). An offender will only be sentenced if the offender does not successfully complete the program. *Id.*

The California cases relied upon in *Stromberg*, *Esteybar v. Municipal Court for Long Beach Judicial District*, 485 P.2d 1140 (Cal. 1971), and *People v. Superior Court of San Mateo County*, 520 P.2d 405 (Cal. 1974), have dubious value, since they involve dissimilar statutory

---

[1]NRS 484.37941 was repealed and replaced by NRS 484C.340.

provisions for treatment of an offense as a misdemeanor and a pre-plea diversion program. And while it is neither necessary nor helpful to try to explicate the Byzantine array of sentencing and alternative sentencing options in California, California has subsequently recognized that a deferred sentencing program, similar to our veterans court, did not violate the separation of powers by conditioning assignment upon prosecutorial agreement. *See People v. Andreotti*, 111 Cal. Rptr. 2d 462, 463-70 (Ct. App. 2001) (explaining the difference between a diversion program and a deferred entry of judgment program, likening the requirement that the prosecutor move to defer entry of judgment to the prosecutor's power to plea bargain, and concluding that this requirement did not violate the separation of powers). The majority's reading of the *Andreotti* decision seemingly ignores the fact that a prosecutor must file a motion for a defendant to be eligible for deferral and the ultimate conclusion that this requirement does not violate the separation of powers. *Id.* It is hard to reconcile how eligibility based upon prosecutorial stipulation differs much in substance to eligibility based upon a prosecutorial motion. Under either scenario, eligibility for placement in a diversion program, which involves prosecutorial agreement, necessarily informs on the district court's discretion to place a defendant in a diversion program.

Other states have similarly determined that conditioning the district court's exercise of discretion upon prosecutorial agreement in deferred sentencing does not run afoul of the separation of powers. *See, e.g., People in Interest of R.M.V.*, 942 P.2d 1317, 1319-22 (Colo. App. 1997) (holding that conditioning deferral of sentencing upon prosecutorial consent does not violate separation of powers because it is analogous to the executive authority to plea bargain); *State v. Graves*, 648 P.2d 866, 868-69

(Or. Ct. App. 1982) (determining that drug diversion statute did not violate separation of powers); *State v. Pierce*, 657 A.2d 192, 195-96 (Vt. 1995) (determining that requiring prosecutorial agreement in deferred sentencing does not violate separation of powers because deferred sentencing is more analogous to the prosecutor's power to plea bargain or a conditional pardon). I agree with these decisions and would hold that NRS 176A.290(2) does not violate the separation of powers by requiring the prosecutor's stipulation before a violent offender is eligible for veterans court.

## III.

After determining that the prosecutorial-stipulation language in NRS 176A.290(2) violates the separation of powers doctrine, the majority addresses severance. It concludes that the remedy for the separation of powers violation is to strike the phrase "unless the prosecuting attorney stipulates to the assignment" from NRS 176A.290(2). As revised, NRS 176A.290(2) now reads: "If the offense committed by the defendant involved the use or threatened use of force or violence or if the defendant was previously convicted . . . of a felony that involved the use or threatened use of force or violence, the district court . . . may not assign the defendant to the program."

Severance is a recognized means of curing constitutional infirmity in a statute. NRS 0.020(1). As employed here, though, it leads to the dog-in-the-manger result that no defendant who is charged with or has committed a violent crime can participate in veterans court. The judiciary's power is protected but at the price of the discretionary eligibility for veterans court the Legislature provided for. The majority appears to try to soften the blow of its decision, which precludes all violent offenders from being assigned to veterans court, by reminding the district court to consider

Supreme Court
of
Nevada

(O) 1947A

8

whether "the facts and circumstances surrounding the offense" show that the offense involved the use or threatened use of force or violence pursuant to NRS 176A.290(2). Aside from the fact that no one has suggested the offense charged in this case did not involve the use or threatened use of force or violence for purposes of NRS 176A.290(2), the record before us establishes the offense involved the use of force (a chokehold). Given the charges, which he admitted in pleading guilty, Mathew Hearn is categorically ineligible for veterans court.

IV.

The wisdom of requiring prosecutorial agreement for a violent offender to be assigned to veterans court is debatable among reasonable people. However, it is up to the Legislature to make public policy determinations about the eligibility requirements for a deferred sentencing program and the parameters of the district court's discretion in determining whether to assign an offender to such a program. Veterans court is Nevada's acknowledgment of the service of the men and women in our military and the debt we owe them for their service. In establishing veterans court, the Legislature acknowledged that combat-related injuries have led to increased contact with the criminal justice system for some veterans and that these veterans would benefit from rehabilitative services. 2009 Nev. Stat., ch. 44, at 99-100 (enacting statements). The Legislature chose to open the doors of veterans court to those who committed violent crimes if the prosecution agreed. But the majority's decision precludes offenders who commit violent crimes from inclusion in the program. I disagree that NRS 176A.290(2) violates the separation of powers doctrine,

and I dissent from the decision categorically precluding all violent offenders from assignment to veterans court.



_____Pickering_____, J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A