Filed 6/29/21  Snowcreek IV Owners' Assn. v. Amerigas Propane CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Mono)

----

| | |
|---|---|
| SNOWCREEK IV OWNERS' ASSOCIATION et al., | C090163, C091254 |
| Plaintiffs and Respondents, | (Super. Ct. No. CV190026 ) |
| v. | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING |
| AMERIGAS PROPANE, LP, | |
| Defendant and Appellant. | [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the nonpublished opinion filed herein on June 9, 2021, be modified as follows:

1.　　On page 8, the second sentence beginning with "Also the court reasoned that propane was not a "critical necessity," delete the word "not."

1

The sentence will now read:

Also, the court reasoned that propane was a "critical necessity," and given the underground propane distribution system, customers could not shop for alternative propane suppliers.

This modification does not change the judgment. Appellant's petition for rehearing is denied.

FOR THE COURT:


_____/s/_____
BLEASE, Acting P. J.


_____/s/_____
MURRAY, J.


_____/s/_____
HOCH, J.

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Mono)

----

| | |
|---|---|
| SNOWCREEK IV OWNERS' ASSOCIATION et al., | C090163, C091254 |
| Plaintiffs and Respondents, | (Super. Ct. No. CV190026 ) |
| v. | |
| AMERIGAS PROPANE, LP, | |
| Defendant and Appellant. | |

After plaintiffs Snowcreek IV Owners' association et al. sued defendant AmeriGas Propane, LP for declaratory relief, AmeriGas brought several motions to compel arbitration.  In this consolidated appeal, AmeriGas appeals from the denial of those motions.  AmeriGas contends the evidence demonstrated plaintiffs accepted the

1

agreement to arbitrate, and a prior agreement from 1987 was immaterial to its motion to compel.[1]

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Complaint

In early 2019, plaintiffs sued AmeriGas seeking declaratory relief as to their rights under a contract governing the sale of propane to their residences. As alleged, the Snowcreek Resort is a development near Mammoth Lakes. In 1987, the original owner and developer, Dempsey Construction Company, was developing the fourth phase of the Snowcreek condominiums. During that phase, Dempsey chose to depart from the "all electric" approach used in prior phases, opting instead to use propane for cooking and heating in Phase IV condominiums.

That choice led Dempsey to negotiate a contract with Turner Propane for the permanent supply of propane to Snowcreek Resort properties ("the 1987 Agreement"). Under the agreement, Turner would receive hundreds of new customers on a "captive and permanent basis," but would be limited in what it could charge for propane. The contract provided that Turner would own the infrastructure for storing the propane and delivering it to the homes.

According to the complaint, the Agreement was recorded, and Dempsey created the Snowcreek homeowners associations, assigning them and their members Dempsey's rights under the Agreement. In 1996, Turner sold its business to Heritage Propane, which honored the pricing formula under the 1987 Agreement.

---

[1] AmeriGas also contends the arbitration agreement is not unconscionable, the trial court's order was impermissibly premised on rules singling out arbitration agreements for disfavored treatment in violation of the Federal Arbitration Act, and remand is not required to determine if plaintiffs rejected the arbitration agreement. We need not reach these contentions as we conclude AmeriGas failed to establish an agreement to arbitrate.

In 2012, AmeriGas acquired Heritage Propane. As alleged, AmeriGas raised prices and fees in breach of the 1987 Agreement. And following a dispute, in September 2017, AmeriGas notified customers that, since 2012, it had ignored the 1987 Agreement pricing formula and would issue credits in compensation.

In August of 2018, AmeriGas told the homeowners associations it had made a deal with a real estate developer, the Chadmar Group, to terminate the 1987 Agreement. Chadmar had purchased undeveloped portions of Snowcreek from Dempsey and had continued development. AmeriGas claimed the agreement was terminated not only as to Chadmar and future property purchasers' rights, but as to Snowcreek owners associations and their members, whose rights had already been assigned.

That same month, AmeriGas told the homeowners associations they would have to sign new contracts and forgo the permanent favorable pricing if they wanted propane to heat their homes after April 1, 2019. Plaintiffs brought this suit in response.[2]

## The 1987 Agreement

A copy of the 1987 Agreement was attached to the complaint, and as pertinent to this appeal, it recited that Dempsey sought to "secure a permanent propane gas distribution supply system" for undeveloped portions of Snowcreek. Turner would provide and operate a "permanent propane gas distribution service" and would retain ownership of the distribution system, including tanks, pipelines, and meters.

The Agreement recited that Dempsey intended to create a non-profit homeowners association for each subdivision, which would "assume legal and financial responsibility

---

[2] The complaint also attached an August 2018 order from a small claims court, finding for the plaintiff homeowner against AmeriGas. The homeowner had sued AmeriGas over the collection of an unauthorized fee. AmeriGas argued, inter alia, that neither the individual homeowner nor the residential Snowcreek project he lived in had standing to enforce the 1987 Agreement. The small claims court rejected those arguments, finding the homeowner and the residential project were third party beneficiaries of the 1987 Agreement.

3

for the administration, management, and operation of the commonly owned areas of the projects . . . ." Dempsey was required to "endeavor to do whatever acts and execute whatever documents which may be required to assign to such HOMEOWNERS ASSOCIATIONS the Benefits, obligations, and duties as contemplated hereunder." And "[u]pon completion of such assignment and delegation, such HOMEOWNERS ASSOCIATION shall be deemed in privity of contract with TURNER, thereby relieving DEMPSEY of any further responsibility or obligation for such specific projects as provided for herein."

The agreement also provided that: "Each successor homeowner's association is expressly intended to be and is hereby made an intended third-party beneficiary to the provisions of this Agreement." And "[t]his Agreement is binding on the heirs, assigns, executors, administrators, agents, personal representatives, and other lawful successors of the parties." The Agreement also stated: "The parties agree that this Agreement shall be recorded and shall run with the land to bind those portions of the Snowcreek Master Plan not now developed with real property improvements."

Finally, as to modifications, the Agreement stated: "This is the entire agreement of the parties. It may be modified only by an instrument in writing signed by all of the parties, or, in the case of successor parties, by such successor parties."

**The Motion to Compel Arbitration as to the Original Plaintiffs**

After answering the complaint,[3] AmeriGas moved to compel arbitration against all but three plaintiffs.[4] It argued its relationship with plaintiffs was governed by the most recent "Terms and Conditions," sent to plaintiffs in 2018. Those Terms and Conditions contained an arbitration clause, to which plaintiffs did not opt out.

AmeriGas stated that as early as 2014, it had sent Terms and Conditions, with each iteration modifying the prior version. It argued, "the present action seeks a judicial declaration of rights concerning a propane distribution agreement entered into in 1987 …. However, because Plaintiffs have agreed to arbitrate disputes such as this which concern Plaintiffs' relationship with AmeriGas, the present action should be resolved in binding arbitration."

AmeriGas also argued that, "[w]hile the 1987 Agreement contains a clause concerning modification,[] as alleged successor and/or related parties to the 1987 Agreement, Plaintiffs' actions in accepting AmeriGas' [Terms & Conditions] through their conduct since 2014 was an express modification of the terms of the 1987 Agreement, rendering arbitration appropriate here."

---

[3] In its answer, AmeriGas denied plaintiffs had standing or had stated a claim for declaratory relief. AmeriGas also wrote that "Plaintiffs are not entitled to relief requested in the Complaint because the parties rescinded the contract under which they claim entitlement to relief." And "Plaintiffs are not entitled to relief requested in the Complaint because the contract under which they claim entitlement was superseded by subsequent contracts."

[4] As discussed below, AmeriGas did not believe the other three plaintiffs, Greg Newbry, Fairway Ranch Owners' Association, and Ranch at Snowcreek Owners' Association, were customers and moved for summary judgment on that basis. We sometimes refer to the group of plaintiffs not including those three as "the original plaintiffs."

Attached to the motion was a declaration, providing in pertinent part that plaintiffs became AmeriGas customers "following AmeriGas' acquisition of Heritage Propane in January 2012."

It also attached copies of the Terms and Conditions sent in 2014, 2015, 2017 and 2018. The 2014 Terms and Conditions were captioned: "Revised general terms and conditions of AmeriGas Propane, L.P. relating to the supply of propane and lease of propane related equipment to residential customers." (Capitalization and bold omitted.) In bold, all caps type it stated: "The company's revised terms and conditions are set forth below. …. This notice will modify all prior agreements and will govern your relationship with the company." (Capitalization and bold omitted.)

Terms and Conditions sent in 2015, 2017, and 2018 included a nearly identical caption and bolded language stating that it "modifies or replaces all prior agreements and governs your relationship with the company." (Capitalization and bold omitted.) The 2018 terms also stated: "Your signature is not required."

**Plaintiffs' Opposition to the Motion to Compel**

Opposing the motion, plaintiffs argued the 1987 Agreement did not require arbitration and could be modified, "*only* by an instrument in writing signed by all of the parties," and "[a]n insert that AmeriGas stuffed into a customer's bill is not a writing, signed by that customer." Plaintiffs also cited the Agreement's terms that it " 'shall be recorded and shall run with the land'" and that each homeowners association will " 'be deemed in privity of contract with Turner' and now its successor, AmeriGas."[5]

---

[5] The opposition attached an April 4, 2019 letter from AmeriGas to plaintiff Newbry's wife stating: "As a customer service, we committed to charge you discounted pricing through April 1, 2019 based on the pricing terms of an outdated and terminated 1987 Agreement, and to notify you of any change. AmeriGas has negotiated updated pricing and terms of service with several homeowners' associations in Snowcreek."

6

**AmeriGas's Reply**

In reply, AmeriGas argued, "the 1987 Agreement was terminated pursuant to an agreement between AmeriGas and Chadmar as successors in interest to the original parties to the 1987 Agreement." And, "[r]egardless of whether the 1987 Agreement was terminated and whether Plaintiffs had any rights under that Agreement, however, Plaintiffs agreed to arbitrate disputes concerning their relationship with AmeriGas."

Also, noting that contracts requiring written modification can still be modified by inconsistent conduct of the parties, AmeriGas argued, "Plaintiffs' practice of repeatedly entering into subsequent contracts with AmeriGas from 2014 until the present constitutes a clear and unambiguous waiver of any claimed entitlement to the signed-modification clause in the 1987 Agreement."

**The Trial Court's Ruling Denying the Arbitration Motion**

The trial court denied the motion to compel arbitration. In a written order, it found AmeriGas failed in its burden to show the parties had agreed to arbitrate.

Doing so, it found plaintiffs had not entered into a new bilateral agreement with AmeriGas by paying invoices accompanied by the new Terms and Conditions. The court explained that cases AmeriGas cited[6] to show conduct could bind parties to arbitrate, involved the customers initiating a business relationship, the business responding by sending a written agreement containing an arbitration clause, and the customer continuing to accept the service after receiving the terms. As the trial court explained, those businesses were not changing terms of an ongoing relationship but were defining terms at the outset. AmeriGas, by contrast, initiated the business relationship by buying Heritage

---

[6] *Wright v. Sirius XM Radio Inc.* (C.D.Cal., June 1, 2017, No. SACV1601688JVSJCGX) 2017 WL 4676580; *Murphy v. DIRECTV, Inc.* (C.D.Cal., Aug. 2, 2011, No. 2:07-CV-06465-JHN) 2011 WL 3319574; and *Bischoff v. DirecTV, Inc.* (C.D.Cal. 2002) 180 F.Supp.2d 1097.

Propane. And when it sent terms and conditions to plaintiffs, it was not defining terms at the outset, but "mid-stream in the business relationship." Also, the court reasoned that propane was not a "critical necessity," and given the underground propane distribution system, customers could not shop for alternative propane suppliers.

Further, the Terms and Conditions were not enforceable as an express or implied modification of an earlier contract. The court noted that a contract requiring written modification (such as the 1987 Agreement) can be modified by conduct, if the parties' conduct is inconsistent with the written agreement. But there was no evidence that plaintiffs' conduct changed or otherwise became inconsistent with the terms of the 1987 Agreement. Failing to terminate service after AmeriGas sent new Terms and Conduction was not an express or implied acceptance.

Finally, the court found AmeriGas could not unilaterally add an arbitration clause to the existing agreement.[7]

### The Motion to Compel as to Plaintiff Greg Newbry

When AmeriGas moved to compel arbitration against the original plaintiffs, it moved for summary judgment against plaintiff Greg Newbry averring he was not an AmeriGas customer.

Opposing the motion, Newbry provided a declaration that in 2015, he and his wife purchased a home in Snowcreek VI. He also provided a copy of a title report obtained at purchase, stating: "An agreement between Turner Gas Company and Dempsey Construction Corporation dated June 25, 1987 and recorded August 7, 1987 in book 485 page 273 of official records. [¶] The interest of Dempsey Construction Corporation was

---

[7] The trial court also found that even if AmeriGas had met its burden, plaintiffs have shown the terms of the arbitration provision are unconscionable and thus unenforceable. Although the parties argue unconscionability in the instant appeal, because we conclude AmeriGas has failed to show an agreement to arbitrate, we need not address plaintiffs' claims of unconscionability.

assigned to Snowcreek VI Association by assignment dated November 18, 2003 and recorded November 18, 2003 as instrument no. 2003012776 of official records. ¶ Reference is made to said document for full particulars.  Said matter affects this and other property."  (Capitalization omitted.)

AmeriGas thereafter withdrew its summary judgment motion as to Newbry, citing evidence that Newbry was a customer.  AmeriGas then moved to compel Newbry to arbitrate, arguing the Terms and Conditions govern their dispute.

The trial court denied the motion, noting the motion "largely renews the arguments made in its earlier motion to compel . . . ."  It also rejected an assertion that because Newbry bought the home in 2015, he chose to become an AmeriGas customer and thus accepted the Terms and Conditions, including the arbitration clause.  No evidence indicated Newbry had any choice of propane supplier, nor any other option for heating the house.  And no other factual difference between Newbry and the original plaintiffs altered that conclusion.

**The Motion to Compel as to Plaintiffs**

**Fairway Ranch Owners' Association and Ranch at Snowcreek Owners' Association**

When AmeriGas moved for summary judgment as to Newbry, it also sought summary judgment as to plaintiffs Fairway Ranch Owners' Association and the Ranch at Snowcreek Owners' Association on the same ground:  they were not customers and therefore lacked standing.

In opposition, the Fairway Ranch Owners' Association provided a declaration of its president that it was formed in 1993 by Dempsey and is a successor-in-interest to Dempsey under the 1987 Agreement.  The association is also empowered to "institute, defend, settle or intervene in litigation" on behalf of its members.

The Ranch at Snowcreek Owners' Association provided a similar declaration, stating the association was formed in 1986 by Dempsey and is a successor-in-interest under the 1987 Agreement.

9

The trial court denied summary judgment, finding a triable controversy as to whether plaintiffs were successors-in-interest or third-party beneficiaries under the 1987 Agreement and their rights under the agreement.

AmeriGas then moved to compel arbitration against the two associations, arguing their claims were intertwined with AmeriGas's Terms and Conditions, and as agents of their members, the associations were bound by their member's arbitration commitments.

The trial court again denied the motion to compel arbitration. It explained that having already found that the customer plaintiffs had not agreed to arbitrate, the associations of those plaintiffs could not be bound to arbitrate.[8]

## DISCUSSION

On appeal, AmeriGas challenges the denial of its motion to compel arbitration as to the original plaintiffs, as well as its subsequent motions as to plaintiffs Newbry, Fairway Ranch Owners' Association, and Ranch at Snowcreek Owners' Association.

We review the denial of a motion to compel arbitration for substantial evidence. (*Brown v. Wells Fargo Bank, N.A.* (2008) 168 Cal.App.4th 938, 953.) But if no facts are disputed, review is de novo. (*Ibid.*) Where material facts are disputed, we accept the trial court's resolution of disputed facts if supported by substantial evidence, and we presume the court found every fact and drew every permissible inference necessary to support the judgment. (*Ibid.*)

### I. The Challenge as to the Original Plaintiffs

As to the plaintiffs in the original motion to compel, AmeriGas argues the evidence demonstrates plaintiffs accepted the arbitration agreement. It points to the updated Terms and Conditions mailed with bills in 2014, 2015, 2017 and 2018, all of which included an arbitration clause. It argues that plaintiffs could have rejected the new

---

[8] It also rejected AmeriGas's estoppel and agency arguments and concluded the arbitration terms were, in any event, unconscionable.

10

provisions as a whole by terminating service or as to the arbitration clause alone by sending an opt-out notice. But by continuing to use AmeriGas propane, plaintiffs accepted the terms, including arbitration. We disagree.

### A. AmeriGas's Burden to Show an Agreement to Arbitrate

The trial court properly found that AmeriGas failed to show the parties agreed to arbitration. While AmeriGas presented evidence that it sent plaintiffs successive Terms and Conditions, it failed to show plaintiffs accepted those terms and conditions, as a modification of the 1987 Agreement, by continuing to accept propane and paying bills.

To be sure, implied acceptance can be found through a customer's decision to continue doing business after the terms of the agreement are modified to include an arbitration clause. (See e.g. *Serafin v. Balco Properties Ltd., LLC* (2015) 235 Cal.App.4th 165, 176 ["Evidence confirming the existence of an agreement to arbitrate, despite an unsigned agreement, can be based, for example, on 'conduct from which one could imply either ratification or implied acceptance of such a provision'"].) But of the cases AmeriGas cites for that point, none involves a prior agreement permitting modification only with a "writing signed by all of the parties."[9]

Further, while a writing requirement for modification can be waived by inconsistent conduct of the parties, no such conduct is present here. (See *Daugherty Co. v. Kimberly-Clark Corp.* (1971) 14 Cal.App.3d 151, 158 ["[a]n agreement to modify a written contract will be implied if the conduct of the parties is inconsistent with the written contract so as to warrant the conclusion that the parties intended to modify it"]; *Biren v. Equality Emergency Medical Group, Inc.* (2002) 102 Cal.App.4th 125, 141

---

[9] AmeriGas cites *Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416, 420; *Ackerberg v. Citicorp USA, Inc.* (N.D.Cal. 2012) 898 F.Supp.2d 1172, 1173; *Cayanan v. Citi Holdings, Inc.* (S.D.Cal. 2013) 928 F.Supp.2d 1182, 1189; and *Mandel v. Household* Bank (Nevada) (2003) 105 Cal.App.4th 75, 81-82 (review granted, then dismissed).

11

[where evidence shows it was their intent, parties may, by their conduct, waive provision requiring writing for modification]; *Garrison v. Edward Brown & Sons* (1944) 25 Cal.2d 473, 479 [same].)  Here, continuing to accept and pay for propane is neither inconsistent with the 1987 Agreement, nor indicative of intent to waive the modification provision.

To that point, AmeriGas argues it "has not argued that the parties' conduct alone modified an existing written agreement," but instead by mailing Terms and Conditions to plaintiffs, it was entering into "a separate bilateral contract."  And thus, the court "does not need to look for inconsistencies in the parties' course of performance to infer a modification occurred."

We find this argument disingenuous in several respects.  For one, the Terms and Conditions mailed to plaintiffs expressly stated they were modifying an existing contract: "The company's *revised* terms and conditions are set forth below.  ….  This notice *will modify all prior agreements* and will govern your relationship with the company." (Capitalization omitted; Italics added.)  For another, AmeriGas cannot sidestep a writing requirement in a contract by simply deeming a modification a separate bilateral contact — particularly where the purported separate bilateral contract governs the same subject matter as the original contract and effectively supplants it.

In sum, the Terms and Conditions mailed to plaintiffs, along with plaintiffs' conduct of continuing to accept and pay for propane, did not modify the 1987 Agreement because it did not constitute a "writing signed by all of the parties."  The trial court therefore properly found AmeriGas had not met its burden.

## B.  Plaintiffs' Burden

Undeterred, AmeriGas maintains that "no evidence was presented establishing that Plaintiffs were parties to the 1987 Agreement, such that AmeriGas's Terms & Conditions would need to modify that earlier agreement."  It reasons that while the petitioner must prove the existence of a valid arbitration agreement, the party opposing arbitration bears

the burden of proving any fact necessary to its defense.[10]  And AmeriGas maintains that plaintiffs introduced no evidence as to their status vis-à-vis Snowcreek developments — such as "whether the individuals resided in the Snowcreek developments and whether they were owners, tenants, roommates or guests."[11]  Similarly, while acknowledging the 1987 Agreement contemplates the creation of homeowners associations, AmeriGas argues it "does not . . . understand such transfers to have occurred," and maintains Chadmar (which acquired Dempsey) is the sole successor to Dempsey's rights under the 1987 Agreement.

Plaintiffs respond that these arguments are forfeited by failing to raise them before the trial court.  We agree with plaintiffs.

AmeriGas's belated contention that plaintiffs are not successors to the 1987 Agreement is forfeited.  "The parties must call the court's attention to issues they deem relevant."  (*North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 28.)  Parties may not change position, adopting new and different theories on appeal.  (*Id.* at p. 29.)  Doing so is not only unfair to the trial court, but " 'manifestly unjust to the opposing party.' "  (*Ibid*.)  Accordingly, "points not raised in the trial court will not be considered on appeal."  (*Dimmick v. Dimmick* (1962) 58 Cal.2d 417, 422.)  Otherwise, " ' " ' " 'the party would in most cases be careful to be silent as to

---

[10]  AmeriGas cites in support *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413 ["If the party opposing the petition raises a defense to enforcement — either fraud in the execution voiding the agreement, or a statutory defense of waiver or revocation … that party bears the burden of producing evidence of, and proving by a preponderance of the evidence, any fact necessary to the defense"]) and *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972 ["a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense"] citing *Rosenthal*, at p. 413.

[11]  It similarly argues that the party assignee asserting rights has the burden of proving the assignment.

13

his objections until it would be too late to obviate them, and the result would be that few judgments would stand the test of an appeal.' " ' " ' " (*Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 265.)

Here, AmeriGas not only failed to raise challenges to plaintiffs' status as successors below, it provided evidence implying the opposite. In moving to compel arbitration, AmeriGas provided a declaration that the original plaintiffs became AmeriGas customers "following AmeriGas' acquisition of Heritage Propane in January 2012." AmeriGas also provided copies of mailed Terms and Conditions purporting to "modify all prior agreements . . . ." (Capitalization omitted.) Indeed, the thrust of AmeriGas's arguments in the trial court was not that the 1987 Agreement never applied to plaintiffs, it was that the agreement was either terminated by Chadmar or modified or replaced by the Terms and Conditions.

And one need only look to plaintiff Newbry to see how this belated challenge has sandbagged the original plaintiffs. When AmeriGas timely claimed that Newbry was not a customer and moved for summary judgment on that ground, Newbry provided a copy of a 2015 title report, providing that: "An agreement between Turner Gas Company and Dempsey Construction Corporation dated June 25, 1987 and recorded August 7, 1987 . . . . [¶] The interest of Dempsey Construction Corporation was assigned to Snowcreek VI Association by assignment dated November 18, 2003 and recorded November 16, 2003 . . . ."[12] This example illustrates that timely challenges can be answered. But having not made the challenge in the trial court, the original plaintiffs can no longer do so here on appeal.

---

[12] As noted, plaintiffs Fairway Ranch Owners' Association and Ranch at Snow Creek Owners' Association similarly provided declarations that they were formed by Dempsey and are successors in interest.

14

Because plaintiffs were deprived of the opportunity to respond in the trial court, we conclude that the challenge forfeited. (See *Imagistics Internat., Inc. v. Department of General Services* (2007) 150 Cal.App.4th 581, 584 fn. 2 ["Pursuing reversal on a basis that might have been timely resolved in the trial court is a disapproved tactic that wastes the resources of the litigants and this court, and we generally do not permit it"].)

### C. Substantial Evidence

In its reply brief, AmeriGas argues that it is in fact raising a substantial evidence challenge to the fact that plaintiffs are successors under the 1987 Agreement. And it notes that a substantial evidence challenge is not subject to waiver. (*Tahoe National Bank v. Phillips* (1971) 4 Cal.3d 11, 23 fn. 17 ["The contention that a judgment is not supported by substantial evidence … is an obvious exception to the rule"].)

While a substantial evidence challenge is indeed not subject to forfeiture, this principal cannot resurrect an argument not raised below. Still, to the extent, AmeriGas challenges the material facts supporting the trial court's ruling, we review the record in that regard and conclude substantial evidence supports the trial court's ruling. (See *Brown v. Wells Fargo Bank, N.A., supra,* 168 Cal.App.4th at p. 953 [Where material facts are disputed, we accept the trial court's resolution of disputed facts if supported by substantial evidence, and we presume the court found every fact and drew every permissible inference necessary to support the judgment].)

As we have explained, the trial court properly found AmeriGas failed to carry its burden of establishing an agreement to arbitrate. That finding was supported by ample evidence. A copy of the 1987 Agreement, governing the sale of propane to Snowcreek residence by Turner Propane, is part of the record. Its terms provide that it "shall run with the land to bind those portions of the Snowcreek Master Plan not now developed with real property improvements." No party disputes that Turner sold its business to Heritage Propane, which began supplying propane to Snowcreek residents.

15

Consistent with that, AmeriGas provided a declaration that the original plaintiffs became AmeriGas customers "following AmeriGas' acquisition of Heritage Propane in January 2012." In its motion to compel, AmeriGas referred to itself (along with Chadmar), as "successors in interest to the original parties to the 1987 Agreement." And the Terms and Conditions AmeriGas sent customers, between 2014 and 2018, purported to, "modif[y] or replace[] all prior agreements"

Tellingly, while AmeriGas moved for summary judgment against several plaintiffs on the ground that they were not customers, it did not do so for the original plaintiffs. Nor did AmeriGas point to anything other than the 1987 Agreement that might have governed the sale of propane to those plaintiffs prior to 2014, when AmeriGas began mailing terms and conditions purporting to modify the agreement.

Given this evidence and permissible inferences drawn therefrom, we accept the trial court's resolution of disputed facts and accordingly conclude the trial court's ruling was supported by substantial evidence.

## II. The Challenge as to Newbry

In a separate appeal we have consolidated, AmeriGas contends plaintiff Greg Newbry is bound to arbitrate for the same reasons as the original plaintiffs. AmeriGas also argues the case is even stronger as to Newbry because he did not own the property when AmeriGas acquired Heritage in 2012. Instead, Newbry, who bought the property in 2015, *had to take affirmative steps in reaching out to AmeriGas to sign up for service*, and therefore there was an explicit acceptance of AmeriGas's Terms & Conditions.[13] We disagree.

The evidence shows that when Newbry purchased his home, the sale of propane was governed by the 1987 agreement, as exhibited in the title report obtained at purchase.

---

[13] Newbry's wife opened the AmeriGas account. The parties agree this does not alter the analysis: "if his wife must arbitrate, so must he."

Thus, Newbry was in the same position vis-à-vis AmeriGas as the original plaintiffs. And as we have rejected the argument that the original plaintiffs expressly or impliedly accepted the arbitration provision, we reach the same conclusion as to Newbry.[14]

### III. The Challenge as to Fairway Ranch Owners' Association & Ranch at Snow Creek Owners' Association

Finally, as to Fairway Ranch Owners' Association and Ranch at Snow Creek Owners' Association, AmeriGas contends these associations are agents of their members and thus bound to arbitrate. But as we have held that AmeriGas has failed to show any agreement to arbitrate as to any plaintiff, we need go no further than to conclude that with no members of these two associations bound to arbitrate, and no indication the associations themselves separately agreed to arbitrate, the trial court properly concluded AmeriGas had failed to show an agreement to arbitrate as to these associations.[15]

\*\*\*\*\*

---

[14] AmeriGas also challenges the trial court's ruling that " 'it is not clear that Newbry "chose" to become an AmeriGas customer.' " We need not reach that specific contention, in light of our holding.

[15] Having so concluded, we do not address AmeriGas's contentions regarding equitable estoppel and agency, and whether those doctrines compel the associations to arbitrate on behalf of their residents.

17

## DISPOSITION

The judgment is affirmed.  Plaintiffs shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

_____/s/_____
MURRAY, J.

We concur:

_____/s/_____
BLEASE, Acting P. J.

_____/s/_____
HOCH, J.